**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**HUNTINGTON DIVISION**

**KEVIN ROBERTSON,**
**JENNY ROSE, and KATHY**
**COLLINS,** *individually and*
*on behalf of all others similarly*
*situated,*

      **Plaintiffs.**

**v.**                                   **Civil Action No.**  3:16-cv-2113

**CAROLYN W. COLVIN,** *in her*
*official capacity as Acting Commissioner*
*of the Social Security Administration*,

      **Defendant.**

## CLASS ACTION COMPLAINT

Come now the Plaintiffs, Wayne County residents Kevin Robertson and Jenny Rose, and Kathy Collins, individually, and on behalf of all others similarly situated, by and through undersigned counsel, and for their Complaint against the Defendant, allege and affirmatively state as follows:

## INTRODUCTION

1.    Plaintiffs bring this class action to challenge the process by which Defendant is acting to re-determine their entitlement to Social Security disability benefits and Supplement Security Income benefits.  These benefits were previously awarded to the named Plaintiffs and over 1,700 similarly situated claimants between 2007 and 2011 based on final decisions of Social

1

Security Administrative Law Judges (ALJs) out of the Huntington hearing office for the Social Security Administration. Defendant (the Commissioner) purports to act under the authority of 42 U.S.C § 405(u), a statutory provision enacted as a part of the Social Security Independence and Program Improvements Act of 1994, and claims that her action is based on an investigation that began at some time during or prior to 2006. This investigation has purportedly inquired into actions of attorney Eric C. Conn, a Kentucky disability lawyer, David B. Daugherty, a former Social Security Administration ALJ, four doctors who provided medical examination reports in disability proceedings between 2007 and 2011, and other individuals not known to Plaintiffs. The results of any such investigation are not known to any of these claimants whose benefits are being redetermined by the Commissioner. Whether this investigation is continuing is not known to these claimants. What is known to Plaintiffs is that no claimant himself or herself yet stands accused of perpetrating any fraud or engaging in any similar fault in securing their disability awards.

2. As is more fully set forth below, the redeterminations are fundamentally unfair to the claimants, violate the United States Constitution, the Social Security Act and the regulations promulgated thereto, and the Administrative Procedures Act.

3. Plaintiffs, both individually and on behalf of the other 1700 or more individuals whose subsistence and health are being adversely affected by the actions of the Defendant, seek (a) immediate injunctive relief from the Court, in order to prevent immediate and irreparable harm to the Plaintiffs; (b) a declaratory judgment finding that the Commissioner's actions in redetermining the claimants' entitlements to Social Security disability and Supplemental Security Income benefits are unlawful; and (c) final injunctive relief ordering that the Commissioner may not continue with her redeterminations until such time as the Social Security Administration

complies with governing Social Security statutes and regulations, the United States Constitution, and the Administrative Procedure Act.

## THE COMMISSIONER'S ALLEGATIONS OF FRAUD OR SIMILAR FAULT

4.      The foundation for the redeterminations that are the subject of this action are the Commissioner's allegations of fraud or similar fault, which originated during investigations initiated by various committees of the United States Congress, and pursued in conjunction with the Social Security Administration's Office of the Inspector General (OIG). The investigations began with the investigation of the Social Security Administration (SSA) itself.

## PRESSURE BY SSA ON ALJS DUE TO BACKLOG

5.      During the years leading up to 2007, SSA primarily focused on processing a backlog of claims that had reached historic proportions.  In 2007, Over 63,000 people waited over 1,000 days for a hearing. Some people waited as long as four years. Congress asserted that these timeframes were unconscionable and made it clear that reducing them should be SSA's top priority. Then Commissioner Michael J. Astrue addressed this increasingly desperate situation during his term by pursuing a variety of efficiencies in the processing of cases at all levels of operations. This backlog reduction plan centered on fast-tracked initial determinations; improving hearing office (now referred to as Office of Disability Adjudication and Review, or ODAR) procedures; and increasing efficiency with technology. Additionally, SSA sought to increase its adjudicatory capacity by putting in place performance goals, urging that ALJs strive to issue 500

to 700 legally sufficient decisions a year. At that time only half of the ALJs were meeting this performance goal. Accordingly, SSA began pressuring ALJs to do more. *Eliminating the Social Security Disability Backlog: Hearing Before the Committee on Ways and Means,* 111th Cong. 12-73 (2009) (statement of Michael J. Astrue, Commissioner, U.S. Social Security Administration).

6.      One of Commissioner Astrue's specific proposals was to have judges review cases in their respective hearing offices that were "unpulled."  Unpulled cases are newly-arrived cases that are not prepared for hearing because staff had yet to engage in the months-long process of selecting documents from the original claim file and organizing and indexing them into an administrative record.  ALJs were asked to review those newer cases to see if there were any that could be decided on the record (OTR) with a view to saving staff resources. OTR decisions are practically uniformly favorable, because an ALJ cannot issue an unfavorable decision without a hearing except in very rare cases.  This early review is a long-established docket control method of conserving staff resources.  Emphasizing prescreening new cases for OTR possibilities has periodically over the years been emphasized or de-emphasized in a pattern that is generally based on case backlog trends. Statement of Michael J. Astrue, *supra*.

7.      After these performance goals were established, Chief ALJ Charlie Andrus of the Huntington, West Virginia, ODAR authored a plan for his office to improve productivity.  The plan was originally designed to help two underperforming ALJs by submitting OTR requests for those ALJs in order to increase their productivity.  Judge Andrus also told all of the judges in the Huntington office that if any of them felt that they had the time, to go to the master docket (the docket of unpulled cases) and review cases that had not yet been assigned for hearing for possible OTR decisions.  Judge Daugherty was one ALJ who did undertake such a review effort.  Eric Conn

was one of three or four attorneys that worked with Judge Daugherty identifying possible OTR cases and obtaining supplemental evidence for him to review for possible OTRs. *Social Security Disability Benefits: Did a Group of Judges, Doctors, and Lawyers Abuse Programs for the Country's Most Vulnerable: Hearing Before the Committee on Homeland Security and Governmental Affairs,* 113 Cong. 69-89 (2013) (Testimony of Charlie P. Andrus, Administrative Law Judge, U.S. Social Security Administration).

8.      During Judge Andrus' tenure, the Huntington ODAR became one of the fastest offices in the country in deciding disability cases. In 2010, it had the second shortest average processing time at just 263 days. In the years leading up to 2011, Judge Daugherty had become one of SSA's higher-producing judges. Other ALJs eventually objected that Judge Daugherty was "cherry-picking" the hearing office caseload in search of OTRs, allegedly as a means of meeting and exceeding his performance goals. The practice was discontinued.

## <u>ALLEGATIONS OF ALLEGED FRAUD</u>

9.      On May 19, 2011, <u>The Wall Street Journal,</u> published an expose-style article about ALJ Daugherty and Attorney Eric C. Conn. Damian Paletta, *Disability-Claim Judge Has Trouble Saying 'No': Near Perfect Approval Record; Social-Security Program Strained,* The Wall Street Journal (May 19, 2011) <u>available at</u>    <u>http://www.wsj.com/articles/</u> SB10001424052748704681904576319163605918524.

10.      In a June 16, 2011 letter, members of the Social Security Subcommittee of the House of Representatives Committee on Ways and Means requested that SSA's Inspector General provide information on ALJs who were significant "outliers" either in terms of their productivity

or their decisional outcomes. OIG's study found that ALJs it spoke to mentioned that peers who felt pressured to meet the 500 to 700 disposition benchmark may have allowed more cases because allowances are easier to process than denials. Its analysis of the twelve high-allowance ALJs identified 3 ALJs with a high percentage of OTR dispositions. OIG Report A-12-11-01138 (Feb. 14, 2012) available at http://oig.ssa.gov/audits-and-investigations/audit-reports/A-12-11-01138.

11.     In September 2012, the Minority Staff of the U.S. Senate Permanent Subcommittee on Investigations issued a report stating that more than a quarter, or 25% of 300 SSA disability decisions "failed to properly address insufficient, contradictory, or incomplete evidence."  The report argued that problems with the agency's decision process were particularly acute at the ALJ level of appeal.  The report alleged that information had emerged that a few ALJs issued and approved cases at levels far higher than their peers.  The report specifically named ALJ Daugherty as one of these ALJs. Minority Staff Report, U.S. Senate Permanent Subcommittee on Investigations, Committee on Homeland Security and Governmental Affairs, *Social Security Disability Programs: Improving the Quality of Benefit Award Decisions* (Sept. 13, 2012), available at http://hsgac.senate.gov/subcommittees/investigations/ hearings/social-security-administrations-disability-programs.

12.     On January 7, 2014, the United States House of Representatives Committee on Oversight and Government Reform asked OIG to identify by name all ALJs who had issued 700 or more dispositions and who had allowance rates of 85% or higher in any two fiscal years since 2007.  The Committee requested that OIG then review the cases to determine whether the ALJs processed the cases consistent with SSA's policies and procedures. Finally OIG was asked to identify actions taken against these named ALJs based on monitoring of their decisions. OIG

identified for the Committee 44 ALJs who (a) issued 700 or more dispositions and (b) had allowance rates of 85% or higher for at least two fiscal years between 2007 and 2013.  Judge David B. Daugherty was one of the 44 ALJ's identified by name.  See Staff Report, U.S. Hose of Representatives, 113th Congress, *Systemic Waste and Abuse at the Social Security Administration: How Rubber-Stamping Disability Judges Cost Hundreds of Billions of Taxpayer Dollars* (June 10, 2014) available at https://oversight.house.gov/wp-content/uploads/2014/06/2014-06-10-Systemic-Waste-and-Abuse-at-the-SSA.ALJs_.pdf; OIG Report, *Administrative Judges With Both High Dispositions and High Allowance Rates*, A-12-14-24092 (Nov. 2014).

13.    The United States Senate Committee on Homeland Security and Governmental Affairs held a hearing on October 7, 2013, *Social Security Disability Benefits: Did a Group of Judges, Doctors, and Lawyers Abuse Programs for the Country's Most Vulnerable: Hearing Before the Committee on Homeland Security and Governmental Affairs,* 113 Cong. (2013).  The Committee issued a written staff report thereafter. The title of the report is "How Some Legal, Medical, and Judicial Professionals Abused Social Security Disability Programs for the Country's Most Vulnerable: A Case Study of the Conn Law Firm." *Id* at 171. In the report, a number of accusations of fraud were made against both Judge Daugherty and Eric C. Conn.  Witnesses at the October 7, 2013 hearing included ALJ Andrus, who testified about his actions described above. Two of four doctors the Committee identified as participating in fraudulent conduct: Bradley Adkins, Ph.D. and Srinivas Ammisetty, M.D testified at the hearing.  Frederic Huffnagle, M.D., did not testify because he died in 2010.  David P. Herr, D.O. declined to testify, as did Judge Daugherty and attorney Eric Conn.  Much of the testimony at the hearing was devoted to describing

questionably relevant but unseemly intra-office warfare among personnel at the Huntington ODAR.

## SSA DECISION TO REDETERMINE CLAIMANTS AND FORECLOSE EVIDENCE OF FRAUD IN INDIVIDUAL HEARINGS

14.     On that same day, October 7, 2013, Debra Bice, Chief Administrative Law Judge of the SSA, told the Senate Committee on Homeland Security and Government Affairs that SSA now had what she termed "reliable evidence" that certain cases contained pre-completed forms *without* an independent review of findings. Bice declared that her information was sufficient to show "similar fault" under the Social Security Act, *Id* at 124.

15.      Bice announced that, based on this information, SSA could redetermine these cases. The agency would commence to review the affected cases, disregarding what she termed "the tainted medical evidence." Then, if the truncated record did not support the original allowance, SSA would provide the beneficiary notice of its completed action and provide the opportunity to submit additional medical evidence before making a final determination on the claimants' disability eligibility.  Beneficiaries would receive notification at the point that SSA terminated their benefits and assessed an overpayment.  Bice said that SSA was already in the process of identifying and reviewing cases.  SSA commenced this process without notice to affected claimants or an opportunity for them to submit evidence or be heard in any respect on the issue of similar fault at this stage (or any later stage) of the proceedings. *Id.*

16.     SSA has yet to disclose the "reliable evidence" that Bice referred to in her statement.  SSA completed its internal and secret review by issuing notices to benefit recipients in May 2015 stating that the SSA was suspending their disability benefits and the benefits of anyone

8

entitled under their Social Security records while it redetermined whether they were entitled to benefits.  The notice further stated that the OIG had notified the SSA that there was reason to believe fraud was involved in cases that included evidence from Bradley Adkins, Ph.D., Srinivas Ammisetty, M.D., Frederic Huffnagle, M.D., or David P. Herr, D.O. SSA later agreed to continue benefits pending ALJ hearings for individual claimants.

17.     Plaintiffs are unaware of any evidence of fraud having been committed by the four named doctors.  And while grand jury proceedings have been ongoing concerning Eric Conn and David Daugherty, the four doctors are not, on information and belief, the subject of any criminal investigations.

## THE REDETERMINATION PROCESS

18.     As is detailed in the following paragraphs, the Commissioner has removed from the administrative records medical evidence that supports the previous claims, declaring it to be "tainted evidence."   However, Plaintiffs have seen no evidence that the medical reports are fraudulent and have no opportunity to confront the claim that their evidence is tainted.  Rather, the Commissioner has burdened claimants with proving again that they were disabled at a fixed period of time as many as ten years ago without the benefit of what was at the time outcome-determinative evidence long after claimants would have had a reasonable opportunity to obtain alternate medical source opinion to support the original and final ALJ decisions.

19.     On July 2, 2014, SSA OIG, claiming to act under the authority of 42 U.S.C. § 1320a-8(l), provided SSA with information regarding 1,787 individuals. These individuals were

9

formerly represented by attorney Eric C. Conn, or his firm, and OIG asserted that it had reason to believe that fraud was involved in their applications for Social Security benefits.

20.     By memorandum, Helen L. Cooper, Acting Counsel to the Inspector General of the Social Security Administration, directed to David F. Black, General Counsel of the Office of the Inspector General of the Social Security Administration, dated May 12, 2015, OIG indicated that it had understood that SSA would use this information to carry out its responsibilities to redetermine cases involving fraud or similar fault under 42 U.S.C. §§ 405(u) & 1383(e)(7)(A)(i), but that the previous referral was with the understanding that SSA was not to take any adverse action against any individual on the list until further notice. This memorandum advised that OIG was not aware of any objections to SSA moving forward with its administrative processing of the redeterminations of the 1,787 individuals whose names were previously provided by OIG to SSA, and informed SSA that it could proceed with its redetermination of the cases of the individuals on the previously transmitted list. The original referral remains secret.

21.     Around May 18, 2015, SSA notified some or all of these 1,787 individuals that their disability benefits were suspended while redeterminations of their original entitlement were undertaken. The notices also indicated that SSA had already decided that any medical evidence submitted in behalf of these claimants from Bradley Adkins, Ph.D., Srinivas Ammisetty, M.D., Frederic Huffnagle, M.D., or David P. Herr, D.O., would be disregarded in these new proceedings. Implementation of this suspension of benefits was later delayed.

22.     In a second notice, SSA indicated through its Appeals Council that it had looked at cases to see if the previous favorable decision was supported after disregarding the evidence signed by one of the medical providers named above. The notices stated that, after reviewing the

remaining evidence, it planned to send cases back to an ALJ for more action and a new decision. SSA again claimed that "by law" it was required to disregard any medical evidence submitted on behalf of these claimants from Bradley Adkins, Ph.D., Srinivas Ammisetty, M.D., Frederic Huffnagle, M.D., or David P. Herr, D.O. The notices gave claimants ten days to submit any evidence they wished to submit. Finally, the notices stated that if there was no response within the ten-day window, SSA would assume that the claimants did not want to send more information, whereupon the claims would be remanded back to an ALJ.

23.      In a third set of notices, the Appeals Council notified claimants that ten days had expired, any evidence submitted had been reviewed, and the case was being remanded for an ALJ to conduct further proceedings. The notices attached a remand order to ODAR, which by its terms required that ALJs on remand disregard the evidence from the four doctors named above in the evaluation of the medical evidence of record; consider evidence related to the relevant period that could be provided by the claimant up to and including the hearing date; offer the claimant the opportunity for a hearing related to the relevant period discussed below; and, if warranted, obtain evidence from a medical expert  and from a vocational expert.

24.      Upon scheduling these hearings, ALJs notified claimants that, in reviewing their cases, evidence from the four doctors would be disregarded and that the decision to disregard this evidence would not be reconsidered. The notices also warned that unfavorable decisions could result in assessments of overpayment of benefits that SSA would then seek to recover unless the right to recovery was waived.

25.      During these redetermination hearings, various rulings have clarified that evidence from the designated proscribed doctors was admissible and would be considered if (a) the

proscribed doctor was a treating health care provider (three of the four have private medical practices in and around Prestonsburg, Kentucky) and the evidence consists of treatment notes; (b) the evidence from the designated doctor was submitted outside the proscribed time frame of January 2007 to May 2011; (c) the evidence was not obtained by Eric C. Conn (one of the doctors who regularly performed independent mental health evaluations for DDS. Conn's evaluation reports frequently appear in these cases).

26.     ALJ rulings are also uniform in announcing that evidence secured by SSA as part of continuing disability reviews of the claimant that may have been undertaken after the original award is excluded as irrelevant *per se*, without requiring its production by SSA and examination by the ALJs, and therefore regardless of actual relevance of the evidence.

27.     The only published rule that governs these redeterminations is HALLEX I-1-3-25, which is titled, Processing Multiple Cases When Fraud or Similar Fault Involved ("Redeterminations"), HALLEX I-1-3-25 (S.S.A), 2014 WL 2889588. The rule was published June 25, 2014, days prior to the commencement of these redeterminations. The rule has now been substantially revised as of February 25, 2016. *See,* Social Security Administration, Office of Disability Adjudication and Review, HALLEX Vol. I, Transmittal No. I-1-83, https://www.ssa.gov/OP_Home/hallex/TS/tsi-1-83.html. Specific processing instructions drafted by SSA for these redeterminations as described in HALLEX remain secret.

## PARTIES

28.     Plaintiff Kevin Robertson is a United States citizen and is a resident of Wayne County, West Virginia, within this judicial district.

12

29.     Plaintiff Jenny Rose is a United States citizen and is a resident of Wayne County, West Virginia, within this judicial district.

30.     Plaintiff Kathy Collins is a United States citizen and is a resident of West Virginia.

31.     Defendant Carolyn Colvin is the Acting Commissioner of the United States Social Security Administration.

## JURISDICTION & VENUE

32.     Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331, as this matter arises under the Constitution and laws of the United States.

33.     Jurisdiction is also conferred on this Court pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and 28 U.S.C. § 1361.

34.     Declaratory and injunctive relief are authorized pursuant to 28 U.S.C. § 2201 and § 2202, and Federal Rules of Civil Procedure 57 and 65.

35.     This Court has personal jurisdiction over the Defendant.

36.     Venue in this District is appropriate pursuant to 28 U.S.C. § 1391(b) and 1391(e), as "a substantial part of the events or omissions giving rise to the claim[s]" herein occurred within this District.

37.     Venue in this District is also appropriate pursuant to 42 U.S.C. § 405(g), as Plaintiffs Kevin Robertson, Jenny Rose, Kathy Collins  and other members of the putative class reside in this judicial district.

## FACTS RELATING TO PLAINTIFF KEVIN ROBERTSON

38.    Plaintiff Kevin Robertson is forty-three years old, and resides in Fort Gay, Wayne County, West Virginia.

39.    Mr. Robertson has an eighth-grade education and worked for approximately twenty years as a land surveyor. He worked until 2006 at which time he became unable to work due to constantly worsening mood swings and panic attacks that treatment with medications failed to control. Mr. Robertson also suffered from physical injuries. He continues to be disabled.

40.    Mr. Robertson applied for and was denied disability benefits on April 22, 2010.  He appealed the denial of benefits and retained Attorney Eric Conn to represent him on appeal. He was evaluated by Dr. Bradley Adkins in order to provide expert opinion evidence about his mental disability.

41.     Mr. Robertson was awarded SSD benefits by ALJ David B. Daugherty in a decision dated December 3, 2010, as a result of physical and mental impairments that rendered him unable to work.  SSA did not appeal this decision and it became the final decision of the Commissioner sixty days after the date of the decision.  Mr. Robertson began receiving disability benefits after the decision, which have continued to be paid to him because of continuing disability.

42.     On or about May 22, 2015, Mr. Robertson received a letter from the SSA suspending his benefits.  The letter indicated that his benefits were suspended because "there was reason to believe fraud was involved in certain cases including evidence from Bradley Adkins, Ph.D., Srinivas Ammisetty, M.D., Frederic Huffnagle, M.D., or David P. Herr, D.O."  A copy of the letter from the SSA is attached hereto as Exhibit A.

14

43.     On or about May 22, 2015, Mr. Robertson also received a "Notice of Appeals Council Action," in which he was advised that the SSA was re-determining his disability case without evidence from Frederic Huffnagle, M.D.  He was advised that he had ten days to submit additional evidence to the Appeals Council, after which his case would be remanded to an ALJ to await a new hearing and during which time he would receive no Social Security Disability payments.

44.      Mr. Robertson appeared before an ALJ for this hearing on October 18, 2015.  On December 16, 2015 the ALJ issued a decision – after disregarding evidence deleted from his record – that the remaining evidence was insufficient to establish his disability in 2009.

45.      Mr. Robertson has appealed this ALJ decision to the Appeals Council, where it is now pending.

46.     As a result of the ALJ decision, Mr. Robertson's benefit payments of approximately $1,100.00 per month were terminated by SSA.  This was his sole income.

47.     As a direct result of the termination of benefits, Mr. Robertson is unable to afford various basic necessities of life, including the medications necessary to treat his medical impairments. The severity of his condition together with the immediate loss of benefits and inability to pay for his medications have created the imminent threat of irreparable physical and mental harm to the Plaintiff, Kevin Robertson.

## FACTS RELATING TO PLAINTIFF JENNY ROSE

48.     Plaintiff Jenny Rose is a fifty-five year old married woman living at 119 Saltpetre Road, Fort Gay, Wayne County, West Virginia.

15

49.     Ms. Rose worked for approximately thirty years in restaurants as a cook, as a clerk in a convenience store, delivering meals to home-bound individuals, steaming hats at a hat factory, and finally sewing emblems on uniforms for Cintas Corporation.  Ms. Rose attended school through the eighth grade, but her educational attainment is significantly less than an eighth-grade level. She has a verbal IQ of 68 and learning disabilities that affect her reading comprehension limitations. She suffers from depression.  She also suffers from a variety of physical ailments, including osteoarthritis of the spine, hypertensive cardiovascular disease, sacroiliac disease, bilateral facet arthropathy, carpel tunnel syndrome, fibromyalgia, neuropathy in her lower extremities, and trochanteric bursitis.

50.     Ms. Rose stopped working in April 2008 due to increasingly severe orthopedic impairments that prevented her from standing, walking, lifting and carrying; enough to support her previous full-time work.  Ms. Rose applied for her disability insurance benefits on January 21, 2010.  Her application was denied by SSA and she appealed the denial. Her lawyer died and she retained Attorney Eric Conn to represent her on appeal.  She was evaluated by Srinivas Ammisetty, M.D., in order to provide expert opinion evidence about the severity of her physical disability.

51.     Ms. Rose was awarded SSD benefits on May 5, 2011, by decision of ALJ David B. Daugherty.  SSA did not appeal the decision, which became the final decision of the Commissioner sixty days later.  Ms. Rose began receiving disability benefits after the decision, which have continued to be paid to her because of continuing disability.

52.     On or around May 18, 2015, Ms. Rose received a letter from the SSA indicating that her benefits were at risk because "there was reason to believe fraud was involved in certain cases that included evidence from Bradley Adkins, Ph.D., Srinivas Ammisetty, M.D., Frederic

Huffnagle, M.D., or David P. Herr, D.O."  A copy of the letter from the SSA is attached hereto as Exhibit B.

53.     On or about September 22, 2015, Ms. Rose received a "Notice of Appeals Council Order Remanding Case to Administrative Law Judge," in which she was advised that the SSA was re-determining her disability case without evidence from Srinivas Ammisetty, M.D., and/or David P. Herr, D.O.  Ms. Rose had submitted medical evidence from Dr. Ammisetty in her original case. She was advised that she had ten days to submit additional evidence to the Appeals Council, after which her case would be remanded to an ALJ to await a new hearing.

54.     On January 14, 2016 a hearing was held before an ALJ in which Ms. Rose submitted additional evidence of her disability during the relevant time period.  The ALJ ordered a review of the newly-submitted evidence and proposed that a later hearing would be convened with a medical expert present to provide expert testimony about her physical impairments in order to assist him in redetermining Ms. Rose's disability.  The hearing has been recently set for April 5, 2016.

55.      Ms. Rose cannot afford her necessary medications without the $800.00 per month that she is receiving from Social Security Disability.  Due to the severity of her condition, she cannot go without her prescribed medications for an indeterminate period of time while waiting for an appeal of any unfavorable ruling to the Appeals Council and then to this Court.

56.     Due to the severity of her condition, the potential loss of benefits and inability to otherwise pay for her medications will create an imminent threat of irreparable physical and mental harm to the Plaintiff, Jenny Rose.

17

## FACTS RELATING TO PLAINTIFF KATHY COLLINS

57.     Plaintiff Kathy Collins is a fifty-three year old single woman living at 1151 West 6th Avenue, Williamson, Mingo County, West Virginia.  Ms. Collins worked as a bank teller for over twenty years.  She suffers from depression.  In 2007 Ms. Collins had a horsing accident and suffered a back injury and developed a seizure disorder.

58.     Ms. Collins was awarded SSD benefits on August 6, 2009, by decision of ALJ David B. Daugherty.  Ms. Collins disability determination was based in part on evidence submitted by Frederic Huffnagle, M.D.  SSA did not appeal the decision, which became the final decision of the Commissioner sixty days later.  Ms. Collins began receiving disability benefits after the decision, which have continued to be paid to her because of continuing disability.

59.     In or around May 18, 2015, Ms. Collins received a letter from the SSA indicating that her benefits were at risk because "there was reason to believe fraud was involved in certain cases that included evidence from Bradley Adkins, Ph.D., Srinivas Ammisetty, M.D., Frederic Huffnagle, M.D., or David P. Herr, D.O."  The notice explained that Ms. Collins case would be remanded to an ALJ to determine her disability without evidence from Frederic Huffnagle, M.D. She was advised that she had ten days to submit additional evidence to the Appeals Council, after which her case would be remanded to an ALJ to await a new hearing.  A copy of the letter from the SSA is attached hereto as Exhibit C.

60.     Ms. Collins was unable to obtain additional medical evidence to support her disability as of 2007.  One medical professional that had treated Ms. Collins had died.  A psychiatrist that had treated Ms. Collins in 2007 had destroyed his records.

61.     On or around August 25, 2015, Ms. Collins received a "Notice of Hearing," in which she was advised that the SSA had set a hearing to redetermine her eligibility for Social Security Disability.

62.     A hearing was held on September 23, 2015, at which time the ALJ continued the hearing to February 17, 2016.   At the February 17, 2016 hearing, the ALJ again continued the hearing for an additional twenty days.

63.     Ms. Collins cannot live without the $883.00 per month that she is receiving from Social Security Disability.  Due to the severity of her condition, she cannot go without her prescribed medications for an indeterminate period of time while waiting for an appeal of any unfavorable ruling to the Appeals Council and then to this Court.

64.     Due to the severity of her condition, the potential loss of benefits will create an imminent threat of irreparable physical and mental harm to the Plaintiff, Kathy Collins.

## **CLASS ALLEGATIONS**

65.     The Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of themselves and the following Class:

> All persons who were receiving Social Security Disability (SSD) and Supplemental Security Income (SSI) benefits during or prior to May 2015, and whose disability status the SSA has sought to redetermine based on the assertion that evidence was provided by their attorney Eric C. Conn during the persons' original disability cases by one or all of the following medical witnesses: Bradley Adkins, Ph.D; Srinivas Ammisetty, M.D.; Frederic Huffnagle, M.D.; David Herr, D.O.

66.   **Numerosity**: On information and belief, between 800 and 1,800 people fall into the definition of the Class as set forth above.  The precise number of members of the Class can be readily identified through access to records maintained by the Defendant's agency.  Approximately 100 of these individuals reside in West Virginia.

67.   **Adequate Representation:** The Plaintiff will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex litigation and class actions.  The named Plaintiffs' claims are representative of the claims of the other members of the Class.  Namely, the named Plaintiffs and each member of the Class are being required to reprove eligibility for benefits solely because evidence was provided during their original disability case by one or more of four enumerated medical witnesses.  Neither Plaintiffs nor counsel have any interests antagonistic to those of the Class.  Defendant has no defenses unique to the named Plaintiffs.  The named Plaintiffs and counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so.

68.   **Typicality:** Plaintiffs' claims are typical of the other members of the Class, in that Plaintiffs and all other members of the Class are being required to reprove eligibility for benefits, when there is no proof of fraud or wrongdoing on their part, because of medical evidence that was presented during their original disability cases by one or more of the four enumerated medical witnesses.

69.   **Commonality and Predominance:** The questions of law and fact involved in this case are common to the named Plaintiffs and the other Class members, and those questions predominate over any questions that may affect individual members of the Class.  Common questions for the Class include, but are not necessarily limited to, the following:

(a)      Whether the evidence of fraud the Defendant relied upon to determine that fraud was involved in "certain cases" involving the four enumerated medical witnesses was legally sufficient;

(b)      Whether the Defendant relied upon improper criteria in choosing the members of the Class as being the "certain cases" in which fraud allegedly occurred;

(c)      Whether the Defendant followed all applicable laws and regulations in the investigation and determination that the Class members' benefits should be subject to redetermination;

(d)      Whether the notice provided by the Defendant to Class members that they would have to reprove eligibility contained all the information required by law and regulation;

(e)      Whether the Defendant improperly excluded evidence from consideration in redeterminations;

(f)      Whether the Defendant improperly foreclosed issues from consideration in redetermination proceedings;

(g)      Whether the Defendant failed to act in a timely manner in initiating the redetermination hearings in May of 2015, when the Defendants were aware of alleged allegations of fraud in 2007, and whether this delay has prejudiced the class members and the plaintiff in these ongoing hearings.

(h)     Whether the Defendant failed to properly promulgate the rules that are being utilized in the ongoing redeterminations, including but not limited to protection of rights to due process and the prohibition that prevents the Plaintiffs and other Class members from challenging evidence of fraud or similar fault on the part of individuals referenced in the form notice letters that all class members received.

(i)     Whether the Defendant has unlawfully made ALJs hearing redetermination cases responsible to or subject to the supervision or direction of employees or agents engaged in the performance of investigative or prosecuting functions for the agency, and unlawfully permitted employees or agents engaged in the performance of investigative or prosecuting functions for the agency to participate and advise in the decision, recommended decision, or agency review.

70.     Plaintiffs expressly reserve the right to revise the foregoing "Class Allegations" and "Class Definition" based on information obtained during additional investigation and discovery.

## CLAIMS FOR RELIEF

## DECLARATORY JUDGMENT ACT 28 U.S.C. §§ 2201, 2202

71.     The allegations set forth herein on behalf of the Plaintiffs, both individually and on behalf of the Class, present actual controversies pursuant to Article III of the United States Constitution.

72.     The actual controversies set forth herein are ripe for adjudication.

73.     The Plaintiffs, both individually and on behalf of the Class, have legally cognizable interests in the outcome of the case and are entitled to relief herein.

74.     As set forth herein, the Plaintiffs, both individually and on behalf of the class, seek a declaratory judgment from this Court that the Defendant's actions violated: (i) the Social Security Act and regulations promulgated thereunder; (ii) the Due Process Clause of the United States Constitution; and (iii) the federal Administrative Procedures Act.

## COUNT I – VIOLATION OF SOCIAL SECURITY ACT & REGULATIONS PROMULGATED THEREUNDER

75.     The Plaintiffs incorporate the preceding paragraphs by reference.

76.     The Social Security Act defines procedures that must be followed in the evaluation of disability in claims made by individuals seeking disability benefits provided for in the Act.

77.     The Social Security Act requires that individuals seeking disability benefits be accorded specifically defined due process rights, including the right to appeal the denial of benefits by SSA. The Act also requires that the Commissioner promulgate regulations through rulemaking procedures consistent with the Administrative Procedure Act to ensure respect for these due process rights. The right to appeal includes but is not limited to the right to a new and independent decision regarding entitlement to benefits; the right to appear at a hearing before a new and independent judge who is not bound by previous decisions of SSA; the right to have all relevant issues relating to benefit entitlement considered and decided in the new and independent proceeding; the right to appear at a hearing before the judge in which all relevant issues will be decided; the right to legally sufficient notice of all issues to be considered in the evaluation and re-evaluation of disability; the right to present evidence and be provided with any and all evidence to

be relied on in reaching a decision about entitlement to disability; and the right to a written decision provided to the claimant by the judge, in which all of the issues have been discussed, the law is explained, and the evidence of record is appropriately weighed. See 42 U.S.C. §§ 405(b), 421(d); 20 C.F.R. §§ 404.929 *et seq.*, 416.1444 *et seq.*

78.     Pursuant to these requirements, SSA has promulgated regulations that prescribe the process used to evaluate disability. After an application for benefits is made to SSA, the evaluation begins with a determination of disability that is in most states provided to SSA through contracts with state agencies called Disability Determination Services (DDS). The state agency will investigate the claim by securing all available medical evidence from a claimant's health care providers. The state agency will also secure medical source opinions as to the severity of a claimant's functional impairments from health care providers, independent medical evaluators and staff medical consultants. The State agency will then present a disability determination to SSA, which will approve or deny the claimant's application based on the determination. See 20 C.F.R. §§ 404.1601 *et seq.*, 416.901 *et seq.*

79.     Claimants whose claims are denied may request a reconsideration of that decision. The claim is then sent back to the state agency for a reevaluation and new determination. See 20 C.F.R. §§ 404.907-.922, 416.1407-.1422.

80.     If the claim is again denied, the claimant may request a hearing before an administrative law judge in SSA's ODAR. Once that ALJ issues a decision on the claim, it becomes a final determination of the Commissioner unless appealed to SSA's Appeals Council within sixty days of the date of the decision. This appeal may be made either by the claimant or by SSA. See 20 C.F.R. §§ 404.929-.922, 416.1429-.1482.

24

81.     A final decision may be reopened only under specified circumstances that include discovery of new and material evidence within four years of the final decision, or at any time by evidence that the decision was obtained through fraud or similar fault. The regulations require that any investigation of fraud or similar fault be prompt and expeditious, and that proof of fraud be judged based on a preponderance of evidence.  The latter requirement calls for an evidentiary proceeding that accords a claimant the due process rights described in preceding paragraphs. See 20 C.F.R. §§ 404.987-.996, 416.1487-.1494.

82.     Plaintiffs, both individually and on behalf of the Class, seek a declaratory judgment from this Court that the Defendant's actions described herein violate the Social Security Act and relevant regulations promulgated thereunder.

## COUNT II – VIOLATION OF DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION

83.     Plaintiffs incorporate the preceding paragraphs by reference.

84.     The Plaintiffs both individually and on behalf of the Class, seek a declaratory judgment from this Court that the Defendant's actions described herein violate the Due Process Clause of the United States Constitution.  See U.S. Const. amend. V.

85.     Plaintiffs' claims for Social Security Disability benefits are based on payments Plaintiffs made over the course of their working lives.  Plaintiffs therefore have a statutory entitlement to these benefits that are protected by the Fifth Amendment to the United States Constitution.

86.     For the named Plaintiffs, and for many other recipients, these benefits are their only source of income and typically provide a standard of living below the federal poverty line.

25

87.     Defendant has also violated Plaintiffs' due process rights by failing to follow the Social Security Act and regulations promulgated thereunder as outlined above. These obligations include an individual assessment of their status prior to the institution of the redetermination hearings.  Defendant failed to make individual determinations of fraud or similar fault existing in the named Plaintiffs' and putative Class members' cases. The Defendant also violated their mandate to "immediately" commence redetermination hearings once they have notice of fraud or similar fault. The defendants were on notice of the alleged conduct in 2007 and violated their timeliness obligation by waiting until May 2015 to send out between 1500 to 1800 similar notice letters. As a result the Plaintiffs' rights have been violated in that the ongoing hearings are obsessively focused on medical records that were generated between 2007 - 2009, and are now missing or destroyed due to the passage of time.

88.     Defendant has violated the Plaintiffs' due process rights and on an ongoing basis is depriving them of an opportunity to be heard by making decisions based on evidence not introduced into the hearings and excluding evidence of their disability without any determination that the particular evidence is untrustworthy.

89.     In conducting the mass hearings which commenced in November of 2015, the Defendant knew there would be a representational crisis, in that the majority of the class members would effectively default due to a combination of their disabled status, and the lack of volunteer lawyers available to represent so many in complex legal proceedings.  Plaintiffs allege that the hearings, for the reasons alleged above, violate due process. The pursuit of administrative remedies would be futile because the administrative process violates due process and the Administrative Procedures Act, as hereinafter further alleged.

26

## COUNT III -- VIOLATION OF ADMINISTRATIVE PROCEDURES ACT (APA)

90.     The Plaintiffs incorporate the preceding paragraphs by reference.

91.     The redetermination proceedings as alleged are formal adjudications, subject to the requirements of 42 U.S.C. § 405(b) and the Administrative Procedure Act.

92.     Official rulemaking under the APA requires notice of the proposed rule, an opportunity for public comment, and publication of the final rule in the Federal Register.  See 5 U.S.C. § 553(b)(A).

93.     The Administration's written policy, the HALLEX manual, states that the agency may "direct" ALJs "to disregard certain evidence," and further that the "claimant may not appeal the agency's statutory mandate to disregard evidence based on OIG referrals of information."  See https://www.ssa.gov/OP_Home/hallex/I-01/I-1-3-25.html.  These rules both (a) directly shape a claimant's benefits (and hence rights), and (b) because they do not leave any room for ALJ discretion, have the effect of law.  However, these HALLEX manual provisions have not been promulgated consistent with the APA's rulemaking procedures, which include publication and opportunity to comment.

94.     The Administration has violated and continues to violate the APA's procedural protections for formal adjudications.  "A party is entitled to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts."  5 U.S.C. § 556(d).  Here, the Plaintiffs and putative Class members are not permitted to cross-examine the fraud allegation made in the OIG report, even though the report limits the factual record.

27

95.     The transcript of testimony and exhibits, together with all papers and requests filed in the proceeding, constitutes the exclusive record for decision."  5 U.S.C. § 556(e).  "When an agency decision rests on official notice of a material fact not appearing in the evidence in the record, a party is entitled, on timely request, to an opportunity to show the contrary."  *Id.*  "A sanction may not be imposed or rule or order issued except on consideration of the whole record or those parts thereof cited by a party and supported by and in accordance with the reliable, probative, and substantial evidence."  *Id.* § 556(d).  The Administration relies on information without submitting it into evidence and without giving the claimant an opportunity to rebut the report's applicability.

96.     An ALJ "may not be responsible to or subject to the supervision or direction of an employee or agent engaged in the performance of investigative or prosecuting functions for an agency.  An employee or agent engaged in the performance of investigative or prosecuting functions for an agency in a case may not, in that or a factually related case, participate or advise in the decision, recommended decision, or agency review pursuant to section 557 of this title, except as witness or counsel in public proceedings."  5 U.S.C. § 554(d).  OIG is part of the investigative or prosecuting functions of the Administration agency.  Defendant violates § 554(d) when its ALJs accept the OIG's factual determination of fraud.

97.     The APA permits a reviewing court to "hold unlawful and set aside agency action" if it is "not in accordance with law," or if it is "arbitrary and capricious."  5 U.S.C. § 706(2).  The Defendant routinely ignores regulations that facially apply to these redetermination proceedings.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiffs, individually and on behalf of the Class defined above, pray for the following relief:

(a)     That the Court certify this case as a class action on behalf of the Class defined above, appoint Kevin Robertson, Jenny Rose, and Kathy Collins as class representatives, and appoint undersigned counsel as class counsel;

(b)     That the Court issue a declaratory judgment in favor of the Class and against the Defendant, which judgment declares that the Defendant's actions violate the Constitution, the Social Security Act and the regulations promulgated thereunder, and the Administrative Procedures Act;

(c)     That the Court award injunctive and other equitable relief as is necessary to protect the interests of the Plaintiffs and the Class, including, *inter alia,* an order enjoining the Defendant from (i) redetermining the disability status of the members of the Class until such time as Defendant complies with the United States Constitution, the Social Security Act and regulations, and the Administrative Procedures Act; (ii) terminating the benefits of the Class members; and (iii) seeking reimbursement for alleged overpayments;

(d)     That the Court award reasonable attorney's fees and expenses incurred in pursing this action pursuant to 28 U.S.C. § 2412; and

(e)     That the Court order any and all other relief which is equitable and just.

29

**THE PLAINTIFFS DEMAND TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

*Respectfully Submitted,*
***KEVIN ROBERTSON***
***JENNY ROSE****, and **KATHY***
***COLLINS,*** *individually and*
*on behalf of a class of*
*individuals similarly situated,*

*By counsel.*

*/s/ Bren J. Pomponio*
Bren J. Pomponio (WV Bar ID # 7774)
Mountain State Justice, Inc.
1031 Quarrier Street, Suite 200
Charleston, West Virginia 25301
Telephone:  (304) 344-3144
Facsimile:  (304) 344-3145
bren@msjlaw.org

30