UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

**KEVIN ROBERTSON
JENNY ROSE,** and **KATHY
COLLINS,** individually and
on behalf of all others similarly
situated,

      Plaintiffs.

v.                                                     **Civil Action No. 3:16-cv-2113
                                                       (Honorable Robert C. Chambers)**

**CAROLYN W. COLVIN,** in her
official capacity as Acting Commissioner
of the Social Security Administration,

      Defendant.

<u>MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION</u>

COME THE PLAINTIFFS, Kevin Robertson, Jenny Rose and Kathy Collins, as individuals and on behalf of all other persons similarly situated, who by and through counsel, and in support of Plaintiffs' Motion for Preliminary Injunction, offer the following for consideration of the Court.

## I.     BACKGROUND AND INTRODUCTION.

Plaintiffs filed this class action on March 4, 2016 to challenge the process by which the Defendant is acting to re-determine their entitlement to Social Security disability benefits and Supplement Security Income benefits. These benefits were previously awarded to the named Plaintiffs and over 1,700 similarly situated claimants between 2007 and 2011 based on final decisions of Social Security Administrative Law Judges (ALJs) out of the Huntington hearing office for the Social Security Administration. The Defendant purports to act under the authority of

*42 U.S.C § 405(u),* a statutory provision enacted as a part of the Social Security Independence and Program Improvements Act of 1994, and claims that her action is based on an investigation that began at some time during or prior to 2006. This investigation purportedly has inquired into actions of attorney Eric C. Conn, a Kentucky disability lawyer, David B. Daugherty, a former ALJ, four doctors who provided medical examination reports in disability proceedings between 2007 and 2011, and other individuals not known to Plaintiffs. The results of any such investigation are not known to those whose benefits are being redetermined. What is known is that no benefit recipient himself or herself has been accused of perpetrating any fraud or engaging in any similar fault in securing their disability awards.

The Plaintiffs and those similarly situated are being subjected to redetermination proceedings that are fundamentally unfair, violate the Social Security Act, violate the Administrative Procedure Act (APA), and violate the United States Constitution. These flawed proceedings either have resulted or will result in the unlawful termination of desperately needed disability benefits and concomitant health insurance benefits. The Defendant's actions are thus causing irreparable harm to the Plaintiffs and those similarly situated.

The process the Defendant utilizes in these redeterminations is becoming settled, although substantial portions of it remain undisclosed. The prescribed adjudication process relies on no regulations promulgated though appropriate rulemaking procedures called for by the APA. In fact, rules that would seem to govern these proceedings have been specifically ruled by the Commissioner to be inapplicable to her actions. The Commissioner has instead provided the following documentary guidances to be used ALJs in three just-released documents:

1. **A Revised HALLEX 1-3-25.** HALLEX is the acronym for the Social Security Administration Hearings, Appeals and Litigation Law manual. Through HALLEX, the Deputy

Commissioner for Disability Adjudication and Review conveys guiding principles, procedural guidance, and information to Office of Disability Adjudication and Review staff. HALLEX defines procedures for carrying out policy and provides guidance for processing and adjudicating claims at the hearing, Appeals Council, and civil action levels. *See* HALLEX I-1-0-1, *available at* <https://www.ssa.gov/OP_Home/hallex/I-01/I-1-0-1.html> (last visited April 4, 2016). HALLEX rules are not promulgated through Administrative Procedure Act rulemaking procedures and do not have the force of statutes or regulations promulgated in the Code of Federal Regulations.

*HALLEX I-1-3-25* is titled "Processing Cases Under Sections 205(u) and 1631(e)(7) of the Social Security Act (Fraud or Similar Fault 'Redeterminations')." *See* HALLEX I-1-3-25 *available at* <https://www.ssa.gov/OP_Home/hallex/I-01/I-1-3-25.html> (last visited April 4, 2016) (Ex. A). It states that a redetermination based on fraud or similar fault is a re-adjudication of the individual's application for benefits, and that redetermination procedures under *42 U.S.C § 405 (u)* and *42 U.S.C § 1631(e)(7)* apply when an individual has received or is receiving monthly benefits. *See id.* Pursuant to *42 U.S.C. §§ 405(u)(1)(B) & 1631(e)(7)(A)(ii)* state that SSA must disregard evidence when there is reason to believe that fraud or similar fault was involved in any initial determination. *See* 42 U.S.C §§ 405(u)(1)(B), 1631(e)(7)(A)(ii).

The revised *HALLEX 1-3-25* establishes a dichotomy between (1) redeterminations that are undertaken by SSA initially and (2) those that are undertaken when SSA receives information from the Office of the Inspector General (OIG) pursuant to *42 U.S.C § 1129(l)*. *See* HALLEX I-1-3-25. The latter provision requires that, as soon as OIG has reason to believe that fraud or similar fault was involved in the application of an individual for monthly insurance benefits, the investigating agency is required to make available information identifying the individual to SSA. OIG must provide this information to the agency unless a prosecutor with jurisdiction over a

3

potential or actual related criminal case(s) certifies in writing that providing the information or redetermining the eligibility of a beneficiary or recipient would jeopardize the criminal prosecution of any person who is a subject of the investigation from which the information was derived. *See id.* The Commissioner has stated that the current redeterminations are in fact the result of an OIG referral, so those provisions of *HALLEX 1-3-25* will be detailed.

*HALLEX 1-3-25* calls for the Office of Disability Adjudication and Review (ODAR) to draft specific processing instructions for any group of cases involving the same source(s) believed to have committed fraud or similar fault. *See id.* To meet the "immediacy" requirement of *42 U.S.C § 405(u)*, ODAR may initially release instructions in a temporary format such as a memorandum or other established mechanism, but will usually finalize instructions in a *HALLEX temporary instruction (TI).* In cases where there is an ongoing criminal investigation, the case-specific *HALLEX TI* remains secret. However information deemed to be "relevant" will be provided in notices and other SSA communications with the beneficiary or recipient. This secret *HALLEX TI* addresses the factual and legal basis for conducting the redetermination. It is supposed to specifically describe the evidence SSA will disregard. The secret *HALLEX TI* then is to prescribe a screening procedure that reviews the claim using remaining evidence after the exclusion takes place, and provides the claimant subject to the redetermination with limited appeal rights. If OIG has identified the individual benefit recipient pursuant to *42 U.S.C. § 1129(l)*, SSA will provide to that person only a summary of the OIG investigative findings, as well as a copy of the OIG §1129(l) referral, with the notice or in the claim file. OIG findings are then acted upon without being revisited. *HALLEX 1-3-25* maintains, however that under *42 U.S.C. §§ 205(u)* and *1631(e)(7)*, adjudicators do not have discretion to reconsider the issue of whether the identified evidence should be disregarded when based on an OIG referral of information. *See* HALLEX I-

1-3-25.  SSA's investigative branch is thus given extraordinary power to determine the outcome of this adjudicative process right at its outset.  By contrast, when a redetermination is based solely on an SSA finding of fraud or similar fault, an adjudicator can consider a beneficiary's or recipient's objection to the disregarding of certain evidence, and if satisfied that fraud or similar fault was not involved in providing the evidence, will consider the evidence.  *See id.*

Finally, *HALLEX 1-3-25* continues with the dichotomy to define a claimant's appeal options. It states, if SSA conducted the redetermination based on its own finding of fraud or similar fault, the recipient may not challenge the statutory mandate to conduct the redetermination, but may appeal whether SSA should have disregarded evidence.  *See id.* If, however, SSA's action is based on OIG referrals of information pursuant to *42 U.S.C. § 1129(l)* or referrals based on a criminal or other law enforcement investigation, the beneficiary or recipient may not appeal the agency's statutory mandate to conduct the redetermination *or* to disregard evidence. *See id.*

**2.     Social Security Ruling SSR 16-1p: Titles II And XVI: Fraud and Similar Fault Redeterminations Under Sections 205(u) And 1631(e)(7) of the Social Security Act.** Social Security Rulings are published under the authority of the Commissioner and make available to the public a series of precedential decisions relating to Federal old-age, survivors, disability, supplemental security income, and black lung benefits programs. Social Security Rulings may be based on case decisions made at all administrative levels of adjudication, Federal court decisions, Commissioner's decisions, opinions of the Office of the General Counsel, and other policy interpretations of the law and regulations. Social Security Rulings are first published in the Federal Register, and are effective upon publication. Although Social Security Rulings do not have the force and effect of the law or regulations, they are binding on all components of the SSA.

*Social Security Ruling SSR 16-1p* was published in the Federal Register on March 14, 2016, to explain the process used to redetermine an individual's entitlement to or eligibility for benefits when there is reason to believe that fraud or similar fault was involved in that individual's application for benefits. *See Social Security Ruling, SSR 16–1p, 81 Fed. Reg. 13436 (March 18, 2016).* It states that fraud and similar fault redeterminations under sections 205(u) and 1631(e)(7) of the Act are distinct from reopenings as described in *20 CFR §§ 404.987–404.996* and *20 CFR §§ 416.1487–416.1494.* *See id. at 13436 n. 1.* Fraud and similar fault redeterminations are also considered distinct from redeterminations of Supplemental Security Income eligibility under Title XVI of the Act as described in *20 CFR § 416.204.* *See id.*

*SSR 16-1p(B)* provides definitions for "Fraud," "Similar fault," and Preponderance of Evidence." *SSR 16-1p(C)* describes how SSA redetermines eligibility. In its provision for appeal rights, *SSR 16-1p(D)* states that an individual may appeal SSA's finding of fraud or similar fault, but that SSA will not "administratively review information provided by SSA's Office of the Inspector General under section 1129(l) of the Act regarding its reason to believe that fraud was involved in the individual's application for benefits." *Id. at 13438.*

3.      **Social Security Ruling, SSR 16–2p: Titles II and XVI: Evaluation of Claims Involving Similar Fault in the Providing of Evidence.** Published on March 14, 2016, this Ruling supersedes and replaces previously published *SSR 00–2p.* *See Social Security Ruling, SSR 16–2p,* 81 Fed. Reg. 13439 (March 14, 2016). It is written to explain the rules that govern the evaluation and adjudication of claims when there is reason to believe similar fault was involved in the providing of evidence in support of the claim. *SSR 16–2p* reiterates that Sections 205(u) and 1631(e)(7) of the Social Security Act provide that SSA must disregard evidence if there is reason to believe that fraud or similar fault was involved in the providing of that evidence. *See id.* at

6

13440. SSR 16–2p explains that similar fault is involved if: (A) an incorrect or incomplete statement that is material to the determination is knowingly made; or (B) information that is material to the determination is knowingly concealed. *See id.* In making determinations about whether there is similar fault, the ruling states that all adjudicators must: 1) Consider all evidence in the case record before disregarding specific evidence; 2) Apply the preponderance of evidence standard, as defined in the Ruling; 3) Fully document the record with the evidence that was the basis for the finding that, based on a preponderance of the evidence, there is reason to believe that similar fault was involved in providing the evidence that is being disregarded. *See id.* at *13441*.

SSR 16–2p also requires that an adjudicator provide a discussion of the evidence that supports a finding to disregard evidence. The discussion must explain that, in accordance with the law, the evidence identified cannot be used as evidence in the claim because, after considering all the information in the case record, the adjudicator has reason to believe that similar fault was involved in providing the evidence and it must be disregarded. *See id. SSR 16–2p* reiterates that a similar fault finding can be made only if there is reason to believe, based on a preponderance of the evidence, the person knew that the evidence provided was false or incomplete. A similar fault finding cannot be based on speculation or suspicion. *See id.*

It is the practice and procedure of the Defendant not to apply these guidelines to circumstances when OIG makes determinations that fraud or similar fault exist, or that it has reason to believe that fraud or similar fault exist.

## II.    THE PLAINTIFFS.

1. **Kevin Robertson.**  Plaintiff Kevin Robertson is forty-three years old, and resides in Fort Gay, Wayne County, West Virginia.  (Aff. of Kevin Robertson ¶ 2 (Ex. B).) Mr. Robertson has an eighth-grade education and worked for approximately twenty years as a land surveyor.  He worked

until 2006 at which time he became unable to work due to constantly worsening mood swings and panic attacks that treatment with medications failed to control. Mr. Robertson also suffered from physical injuries. He continues to be disabled.  (Robertson Aff. ¶ 3.)

Mr. Robertson applied for and was denied disability benefits on April 22, 2010. He appealed the denial of benefits and retained Attorney Eric Conn to represent him on appeal. He was evaluated by Dr. Bradley Adkins in order to provide expert opinion evidence about his mental disability.  (Robertson Aff. ¶ 4.) Mr. Robertson was awarded SSD benefits by ALJ Daugherty in a decision dated December 3, 2010, as a result of physical and mental impairments that rendered him unable to work. SSA did not appeal and it became the final decision of the Commissioner 60 days after the decision date. Mr. Robertson began receiving disability benefits after the decision, which have continued to be paid to him because of continuing disability. (Robertson Aff. ¶ 5.)

On or about May 22, 2015, Mr. Robertson received a letter from the SSA suspending his benefits. The letter indicated that his benefits were suspended because "there was reason to believe fraud was involved in certain cases including evidence from Bradley Adkins, Ph.D., Srinivas Ammisetty, M.D., Frederic Huffnagle, M.D., or David P. Herr, D.O." (Robertson Aff. ¶ 6.) On or about May 22, 2015, Mr. Robertson also received a notice in which he was advised that the SSA was re-determining his disability case without the evidence from Dr. Adkins. He was advised that he had ten days to submit additional evidence to the Appeals Council, after which his case would be remanded to an ALJ to await a new hearing and during which time he would receive no Social Security Disability payments.  (Robertson Aff. ¶ 7.) Mr. Robertson appeared before an ALJ for this hearing on October 18, 2015.  (Robertson Aff. ¶ 8.) On December 16, 2015 the ALJ issued a decision – after disregarding evidence deleted from his record – that the remaining evidence was

8

insufficient to establish his disability in 2009. (Robertson Aff. ¶ 8.) Mr. Robertson has appealed this ALJ decision to the Appeals Council, where it is now pending.  (Robertson Aff. ¶ 9.)

As a result of the ALJ decision, Mr. Robertson's benefit payments of approximately $1,100.00 per month were terminated. This was his sole income.  (Robertson Aff. ¶ 10.) As a direct result of the termination of benefits, Mr. Robertson is unable to afford various basic necessities of life, including the medications necessary to treat his medical impairments. The severity of his condition together with the immediate loss of benefits and inability to pay for his medications have created the imminent threat of irreparable physical and mental harm. (Robertson Aff. ¶ 11.)

2. **Jenny Rose**. Plaintiff Jenny Rose is a fifty-five year old married woman living at 119 Saltpetre Road, Fort Gay, Wayne County, West Virginia. (Aff. of Jenny Rose ¶ 1 (Ex. C).) Ms. Rose worked for approximately thirty years in restaurants as a cook, as a clerk in a convenience store, delivering meals to home-bound individuals, steaming hats at a hat factory, and finally sewing emblems on uniforms for Cintas Corporation. Ms. Rose attended school through the eighth grade, but her educational attainment is significantly less than an eighth-grade level. She has a verbal IQ of 68 and learning disabilities that affect her reading comprehension limitations. She suffers from depression. She also suffers from a variety of physical ailments, including osteoarthritis of the spine, hypertensive cardiovascular disease, sacroiliac disease, bilateral facet arthropathy, carpel tunnel syndrome, fibromyalgia, neuropathy in her lower extremities, and trochanteric bursitis. (Rose Aff. ¶ 2.) Ms. Rose stopped working in April 2008 due to increasingly severe orthopedic impairments that prevented her from standing, walking, lifting and carrying; enough to support her previous full-time work. (Rose Aff. ¶ 3.)

Ms. Rose applied for her disability insurance benefits on January 21, 2010. Her application was denied by SSA and she appealed the denial. Her lawyer died and she retained Attorney Eric

Conn to represent her on appeal. She was evaluated by Srinivas Ammisetty, M.D., in order to provide expert opinion evidence about the severity of her physical disability. (Rose Aff. ¶ 3.) Ms. Rose was awarded SSD benefits on May 5, 2011, by decision of ALJ Daugherty. SSA did not appeal the decision, which became the final 60 days later. Ms. Rose then began receiving disability benefits, which have continued to be paid to her because of continuing disability. (Rose Aff. ¶ 4.)

On or around May 18, 2015, Ms. Rose received a letter from the SSA indicating that her benefits were at risk because "there was reason to believe fraud was involved in certain cases that included evidence from Bradley Adkins, Ph.D., Srinivas Ammisetty, M.D., Frederic Huffnagle, M.D., or David P. Herr, D.O." (Ex. D.)  On or about September 22, 2015, Ms. Rose received a "Notice of Appeals Council Order Remanding Case to Administrative Law Judge," in which she was advised that the SSA was re-determining her disability case without evidence from Srinivas Ammisetty, M.D., and/or David P. Herr, D.O. (Ex. E.) Ms. Rose submitted medical evidence from Dr. Ammisetty in her original case. She was advised that she had ten days to submit additional evidence, after which her case would be remanded to an ALJ. On January 14, 2016 a hearing was held before an ALJ in which Ms. Rose submitted additional evidence of her disability during the relevant time period. The ALJ ordered a review of the newly-submitted evidence and proposed that a later hearing would be convened with a medical expert present to provide expert testimony about her physical impairments. The hearing was held on April 5, 2016. (Rose Aff. ¶ 7.)

Ms. Rose cannot afford her necessary medications without the $800.00 per month that she is receiving from Social Security Disability. Due to the severity of her condition, she cannot go without her prescribed medications for an indeterminate period of time while waiting for an appeal of any unfavorable ruling to the Appeals Council and then to this Court. Ms. Rose's husband's medical condition is forcing his medical retirement, at which time his own disability benefits will

be insufficient to pay for basic food, shelter, and necessary living expenses for the couple, who will likely lose their home if their benefits are reduced.  (Rose Aff. ¶ 8.)Due to the severity of her condition, the potential loss of benefits and inability to otherwise pay for her medications will create an imminent threat of irreparable physical and mental harm. (Rose Aff. ¶ 9.)

3. **Kathy Collins.** Plaintiff Kathy Collins is a fifty-three year old single woman living at 1151 West 6th Avenue, Williamson, West Virginia. Ms. Collins worked as a bank teller for over twenty years. She suffers from depression. In 2007 Ms. Collins had a horsing accident and suffered a back injury and developed a seizure disorder. (Aff. of Kathy Collins ¶ 1 (Ex. F).)

Ms. Collins was awarded SSD benefits on August 6, 2009, by decision of ALJ David B. Daugherty. Ms. Collins disability determination was based in part on evidence submitted by Frederic Huffnagle, M.D. SSA did not appeal the decision, which became the final decision of the Commissioner sixty days later. Ms. Collins began receiving disability benefits after the decision, which have continued to be paid to her because of continuing disability. (Collins Aff. ¶ 2.)

In or around May 18, 2015, Ms. Collins received a letter from the SSA indicating that her benefits were at risk because "there was reason to believe fraud was involved in certain cases that included evidence from Bradley Adkins, Ph.D., Srinivas Ammisetty, M.D., Frederic Huffnagle, M.D., or David P. Herr, D.O." (Ex. G.) The notice explained that Ms. Collins case would be remanded to an ALJ to determine her disability without evidence from Frederic Huffnagle, M.D. She was advised that she had ten days to submit additional evidence to the Appeals Council, after which her case would be remanded to an ALJ to await a new hearing. (Collins Aff. ¶ 3.)

Ms. Collins was unable to obtain additional medical evidence to support her disability as of 2007. One medical professional that had treated Ms. Collins had died. A psychiatrist that had treated Ms. Collins in 2007 had destroyed his records. (Collins Aff. ¶ 4.) On or around August 25,

2015, Ms. Collins received a "Notice of Hearing," in which she was advised that the SSA had set a hearing to redetermine her eligibility for Social Security Disability. A hearing was held on September 23, 2015, at which time the ALJ continued the hearing to February 17, 2016. At the February 17 hearing, the ALJ continued the hearing for an additional 20 days. (Collins Aff. ¶ 6.)

Ms. Collins cannot live without the $883.00 per month that she is receiving from Social Security Disability. Due to the severity of her condition, she cannot go without her prescribed medications while waiting for an appeal of any unfavorable ruling to the Appeals Council and then to this Court. (Collins Aff. ¶ 7.) Due to the severity of her condition, the potential loss of benefits will create an imminent threat of irreparable physical and mental harm. (Collins Aff. ¶ 8.)

### III.    LEGAL ARGUMENT.

*Federal Rule of Civil Procedure* 65 provides for the issuance of preliminary injunctions upon notice to the opposing party. The purpose of the preliminary injunction is to protect the parties in their present positions, to prohibit irreparable harm, and to prevent future violations. *United States v. W. T. Grant Co., 345 U.S. 629 (1953); see also United States v. South Carolina,* 720 F.3d 518, 524 (4th Cir. 2013) ("The traditional office of a preliminary injunction is to protect the status quo and to prevent irreparable harm during the pendency of a lawsuit ultimately to preserve the court's ability to render a meaningful judgment on the merits.") (citation omitted).

When a party seeks "to maintain the status quo and prevent irreparable harm while a lawsuit remains pending," that is characterized as a *prohibitory* preliminary injunction. *League of Women Voters of N. Carolina v. N. Carolina*, 769 F.3d 224, 236 (4th Cir. 2014) (citation omitted).  To prevail, "[p]laintiffs must demonstrate that (1) they are likely to succeed on the merits; (2) they will likely suffer irreparable harm absent an injunction; (3) the balance of hardships weighs in their

favor; and (4) the injunction is in the public interest." *Id.* (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

A district court's grant of a preliminary injunction is reviewed under an abuse-of-discretion standard. *Id.* at 235. As long as the district court "applied a correct preliminary injunction standard, made no clearly erroneous findings of material fact, and demonstrated a firm grasp of the legal principles pertinent to the underlying dispute," no abuse of discretion has occurred. *Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 192 (4th Cir. 2013) (en banc).

It is important to note that the Plaintiffs' request for a preliminary injunction is not intended to obtain a final remedy for the claims set forth in the Complaint, but rather is to forestall irreparable and potentially catastrophic injury to the Plaintiffs until the merits are ultimately decided. In other words, the Plaintiffs seek herein "merely to preserve the relative positions of the parties until a trial on the merits can be held." *United States v. S. Carolina*, 720 F.3d at 524 (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). When these four factors are considered, the Plaintiffs are clearly entitled to the requested injunctive relief.

## A.    There Is A Strong Likelihood That The Plaintiffs Will Prevail On The Merits.

While all four considerations often require that determinations be made in early stages of litigation, a substantial likelihood of success on the merits may be shown even where the case involves complex or novel questions of law or presents a matter of first impression. "Although this inquiry requires plaintiffs seeking injunctions to make a 'clear showing' that they are likely to succeed at trial, plaintiffs need not show a certainty of success." *Pashby v. Delia*, 709 F.3d 307, 321 (4th Cir. 2013); *see also League of Women*, 769 F.3d at 247.

Because, as the following discussion sets forth, the process challenged by the Plaintiffs fails to meet the requirements of law, Plaintiffs have demonstrated a likely success on the merits.

**1.    The Commissioner may not now act in a manner adverse to the claimants under the authority of 42 U.S.C. § 405(u) because her action is not timely.**

The Commissioner cites one statutory provisions of the Social Security Act as the basis for these administrative proceedings against the Plaintiffs. *42 U.S.C. § 405(u)* provides in part as follows:

> (1)(a) The Commissioner of Social Security shall immediately redetermine the entitlement of individuals to monthly insurance benefits under this title if there is reason to believe that fraud or similar fault was involved in the application of the individual for such benefits, unless a United States attorney, or equivalent State prosecutor, with jurisdiction over potential or actual related criminal cases, certifies, in writing, that there is a substantial risk that such action by the Commissioner of Social Security with regard to beneficiaries in a particular investigation would jeopardize the criminal prosecution of a person involved in a suspected fraud.

42. U.S.C. § 405(u).  OIG referrals presumably come to the Commissioner, as in this case, pursuant to the provisions of *42 U.S.C. § 1320a–8*, which provides in pertinent part as follows:

> (l) As soon as the Inspector General, Social Security Administration, has reason to believe that fraud was involved in the application of an individual for monthly insurance benefits under title II or for benefits under title VIII or XVI, the Inspector General shall make available to the Commissioner of Social Security information identifying the individual, unless a United States attorney, or equivalent State prosecutor, with jurisdiction over potential or actual related criminal cases, certifies, in writing, that there is a substantial risk that making the information so available in a particular investigation or redetermining the eligibility of the individual for such benefits would jeopardize the criminal prosecution of any person who is a subject of the investigation from which the information is derived.

42 U.S.C. § 1320a-8. These plaintiffs and putative members of the class all received disability benefits pursuant to decisions made by administrative law judges between five and ten years ago.

*Title Twenty of the Code of Federal Regulations, Section 404.955*[1] provides as follows:

**§ 404.955. The effect of an administrative law judge's decision.**

---

[1] References in this Memorandum are to 20 C.F.R. Part 404, which governs disability insurance benefits. Parallel provisions are contained in 20.C.F.R. Part 416, which are applicable to Supplemental Security Income (SSI) claims.

The decision of the administrative law judge is binding on all parties to the hearing unless—

(a) You or another party request a review of the decision by the Appeals Council within the stated time period, and the Appeals Council reviews your case;

(b) You or another party requests a review of the decision by the Appeals Council within the stated time period, the Appeals Council denies your request for review, and you seek judicial review of your case by filing an action in a Federal district court;

(c) The decision is revised by an administrative law judge or the Appeals Council under the procedures explained in § 404.987;

(d) The expedited appeals process is used;

(e) The decision is a recommended decision directed to the Appeals Council; or

(f) In a case remanded by a Federal court, the Appeals Council assumes jurisdiction under the procedures in § 404.984.

20 C.F.R. § 404.955.  To have a case reconsidered (or redetermined) after an ALJ decision has become final, that ALJ's final decision must be reopened. Although the Commissioner has recently declared that redeterminations are distinct from re-openings, *see SSR 16–1p, 81 Fed. Reg. 13436 n.1*, no such distinction exists under the law. Under the current regulations, a final decision may be reopened only pursuant to *20 C.F.R. § 404.987*, which provides:

**Reopening and revising determinations and decisions.**

(a) General. Generally, if you are dissatisfied with a determination or decision made in the administrative review process, but do not request further review within the stated time period, you lose your right to further review and that determination or decision becomes final. However, a determination or a decision made in your case which is otherwise final and binding may be reopened and revised by us.

(b) Procedure for reopening and revision. We may reopen a final determination or decision on our own initiative, or you may ask that a final determination or a decision to which you were a party be reopened. In either instance, if we reopen the determination or decision, we may revise that determination or decision. The conditions under which we may reopen a previous determination or decision, either on our own initiative or at your request, are explained in § 404.988.

20 C.F.R. § 404.987.  The following section sets forth the conditions for reopening:

A determination, revised determination, decision, or revised decision may be reopened—

(a) Within 12 months of the date of the notice of the initial determination, for any reason;
(b) Within four years of the date of the notice of the initial determination if we find good cause, as defined in § 404.989, to reopen the case; or
(c) At any time if—
(1) It was obtained by fraud or similar fault (see § 416.1488(c) of this chapter for factors which we take into account in determining fraud or similar fault);

20 C.F.R. § 404.988. The regulations more than imply that it is the *fact* of fraud or similar fault - not the mere suspicion of such - that is the necessary prerequisite for opening the final decisions of administrative law judges under the circumstances alleged herein.

The May 12, 2015 letter to the Social Security Administration from the Office of the Inspector General, which the Commissioner heavily relies on in these proceedings, does not suffice to meet any of the existing prerequisites for these redetermination proceedings against the plaintiffs. It is not a finding that fraud or similar fault has been found to exist in the previous adjudications of disability. To the contrary, *HALLEX I-1-3-12 (Referrals From the Office of the Inspector General Regarding Suspected Misconduct and Criminal Violations)* states that OIG referrals are merely allegations and do not imply or establish any findings. *See* HALLEX I-1-0-1, *available at* < https://www.ssa.gov/OP_Home/hallex/I-01/I-1-3-12.html> (last visited April 4, 2016). Without more in the nature of supporting evidence, these referrals cannot be the sole basis for reopening final decisions in disability claims. Moreover, this letter is not even a referral itself, but only references what is possibly a previous referral.

Furthermore, the Commissioner has heretofore indicated that there is no additional evidence concerning fraud or similar fault she intends to present in these proceedings to justify a reopening of the earlier final decisions determining that the claimants are entitled to disability benefits. Therefore, no finding that the claimant's prior decision was obtained by fraud or similar

16

fault has been or will be made in any proceeding of which the claimant has had notice or even

knowledge, or has had an opportunity to appear and present evidence. There is no basis under

*Section 404.988* for reopening final decisions made by ALJs years ago in Plaintiffs' claims.

     While such a finding may be forthcoming in the future, it is simply too late to sustain these

redeterminations. The regulations specifically address the circumstances the Plaintiffs find

themselves in that are the subject of the present litigation against the Commissioner, where there

has been an investigation of allegations of fraud.  *See* 20 C.F.R. § 404.99(1)(a). The regulations

provide as follows:

    **§ 404.99(1)(a) Late completion of timely investigation.**

    We may revise a determination or decision after the applicable time period in §
    404.988(a) or § 404.988(b) expires if we begin an investigation into whether to
    revise the determination or decision before the applicable time period expires. We
    may begin the investigation either based on a request by you or by an action on our
    part. The investigation is a process of gathering facts after a determination or
    decision has been reopened to determine if a revision of the determination or
    decision is applicable.

    (a) If we have diligently pursued the investigation to its conclusion, we may revise
    the determination or decision. The revision may be favorable or unfavorable to you.
    "Diligently pursued" means that in light of the facts and circumstances of a
    particular case, the necessary action was undertaken and carried out as promptly as
    the circumstances permitted. Diligent pursuit will be presumed to have been met if
    we conclude the investigation and if necessary, revise the determination or decision
    within 6 months from the date we began the investigation.

    (b) If we have not diligently pursued the investigation to its conclusion, we will
    revise the determination or decision if a revision is applicable and if it will be
    favorable to you. We will not revise the determination or decision if it will be
    unfavorable to you.

20 C.F.R. § 404.99(1)(a).  While it is not clear from the administrative records in these cases when

exactly SSA did commence this investigation, it is a matter of public record that the Commissioner

has been aware of the underlying allegations of impropriety now being acted on since at least the

Spring of 2011. *See* Transcript S. Hrg. 113-503, "Social Security Disability Benefits: Did A Group

17

Of Judges, Doctors, And Lawyers Abuse Programs For The Country's Most Vulnerable?" (October 7, 2013) *available at* https://www.gpo.gov/fdsys/pkg/CHRG-113shrg85499/html/CHRG-113shrg85499.htm (last visited April 4, 2016). This transcript reflects that the Inspector General had commenced his investigation prior to initial contact with potential witnesses no less than two and one half years prior to the 2013 hearing.

Both *42 U.S.C. 1320a–8* and *42 U.S.C. §405(u)* provide that a redetermination may be delayed in the event a United States attorney, or equivalent State prosecutor, with jurisdiction over potential or actual related criminal cases, certifies, in writing, that there is a substantial risk that such action by the Commissioner of Social Security with regard to beneficiaries in a particular investigation would jeopardize the criminal prosecution of a person involved in a suspected fraud. However, heretofore the Commissioner has not publicized any evidence that indicates that there has been such a certification from any of the individuals authorized to delay redeterminations.

The United States Supreme Court has said that statutory limitation periods are "designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Bowen v. New York*, 476 U.S. 467, 481 n.13 (1986) (citation omitted). The Commissioner failed to pursue immediately, promptly or diligently the investigation that at this very late date is leading to the present action to redetermine the claimant's entitlement to disability. One of the accused doctors died in 2010. Another has asserted his right not to testify in investigatory proceedings, as has the attorney who represented the claimant in the earlier proceeding. The psychiatrist that treated Ms. Collins has destroyed his records. As a practical

matter, it is many years too late to secure new medical opinion as to the claimants medical condition as it existed years ago. What the Supreme Court in *Bowen* warned against is exactly what has happened to these plaintiffs. These claims made by the Commissioner are so stale that they must in fairness to the plaintiffs, and those similarly situated, be thrown out.

>    **2.      No alternative regulations have heretofore been promulgated by which the Commissioner can appropriately exercise statutory authority under 42 U.S.C. § 405(u).**

*Social Security Ruling SSR 16-1p* states in a footnote to its statement of purpose that fraud and similar fault redeterminations under sections 205(u) and 1631(e)(7) of the Social Security Act are distinct from reopenings as described in *20 CFR §§ 404.987–404.996*. There is no clear reason stated or apparent for this distinction, but even assuming *arguendo* the Commissioner has the authority to recognize such a distinction, it would be inconsistent with the her statutory authority. Consideration of other provisions of *42 U.S.C. § 405*, of which *42 U.S.C. §405(u)* is a part, provides context for the Commissioner's statutory authority in conducting re-openings. Congress did not include any procedural protections within the four corners of *§ 405(u)* that would indicate that it is to be read separate from the protections provided for elsewhere in *42 U.S.C. § 405*.

*Subsection 405(a)* provides that the Commissioner shall adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits. *See* 42. U.S.C. 405(a). *Subsection 405(b)(2)* provides that

> [i]n any case where—
>
>> (A) an individual is a recipient of disability insurance benefits. . .
>> (B) the physical or mental impairment on the basis of which such benefits are payable is found to have ceased, not to have existed, or to no longer be disabling, and
>> (C) as a consequence of the finding such individual is determined by the Commissioner of Social Security not to be entitled to such benefits,

> any reconsideration of the finding . . . shall be made only after opportunity for an evidentiary hearing, with regard to the finding . . . .

42 U.S.C. § 405(b)(2).  Elsewhere in the Act, there exist uniform standards for determination of disability, and the specific requirement that the Commissioner shall establish by regulation uniform standards which shall be applied at all levels of determination, review, and adjudication in determining whether individuals are under disabilities as defined in Sections 216(i) or 223(d) [42 USCS § 416(i) or 423(d)].  *See* 42 U.S.C. § 421(k).  It also provides that regulations promulgated shall be subject to the rulemaking procedures established under Section 553 of Title 5 of the United States Code (the Administrative Procedure Act).  *Id.*

Any finding made by the Commissioner pursuant to *42 U.S.C. §405(u)* constitutes a finding under *42 U.S.C. § 405(b)(2)*.  Furthermore it is a determination of disability within the meaning of *42 U.S.C. § 421(k).*  If this part of the statute is not to be effectuated under existing regulations, it is incumbent on the Commissioner to promulgate regulations that do provide the due process called for by the statutes.  Yet, despite over twenty years having passed since the enactment of *42 U.S.C. § 405(u),* the Commissioner has failed to do so.  And if existing regulations do not suffice, then neither the present nor any prior Commissioner has fulfilled the responsibility to adopt reasonable and proper rules and regulations as required by statute for the proper establishment of the claimant's rights when SSA determines to utilize *42 U.S.C. §405(u)*, a benefit entitlement determination.  The only guidance for these proceedings is *HALLEX I-1-3-25*, and now *Social Security Rulings SSR 16-1p* and *SSR 16-2*, discussed in preceding paragraphs.  These guidelines, however, have not been properly promulgated.

As used in these proceedings, these provisions must be considered legislative rules within the meaning of the APA, in that they "create new rights and have the force and effect of law."

*Chen Zhou Chai v. Carroll*, 48 F.3d 1331, 1340 (4th Cir. 1995) (citing *American Mining Congress v. Mine Safety & Health Administration*, 995 F.2d 1106, 1109 (D.C. Cir. 1993)). *HALLEX I-1-3-25* states that the agency may direct the adjudicator to disregard evidence, based on OIG referrals. It further limits a claimant's appeal rights to only appeals of the agency's fraud-finding unrelated to the basis for the redetermination and may not appeal the agency's statutory mandate to disregard evidence based on OIG referrals of information. And *Social Security Rulings SSR 16-1p* and *SSR 16-2* confirm these restrictions. Irrespective of whether the Commission calls these provisions "procedural," they have such significant effect on the redetermination process—eliminating a significant body of evidence and foreclosing an appeal on that issue—that should be deemed "sufficiently grave so that notice and comment are needed to safeguard the policies underlying the APA." *JEM Broad. Co. v. FCC*, 22 F.3d 320, 327 (D.C. Cir. 1994) (citation omitted), *cited favorably in Inova Alexandria Hosp. v. Shalala*, 244 F.3d 342, 349 (4th Cir. 2001).

Legislative rules must be promulgated through notice-and-comment rulemaking under the APA. *See* 5 U.S.C. § 553(b)(A). Because *HALLEX I-1-3-25* and *Social Security Rulings SSR 16-1p* and *SSR 16-2* were not issued through notice-and-comment rulemaking, they cannot be validly used to govern the substantive rights of the parties in these proceedings. Thus the Commissioner has failed to promulgate properly regulations governing redetermination hearings under *§ 405(u)*.

### 3. These administrative proceedings fail to comply with protections for formal adjudications under the Administrative Procedure Act.

If a statute requires an "adjudication … to be determined on the record after opportunity for an agency hearing," such an action is considered "formal adjudication" under the *APA*. *See* 5 U.S.C. § 554(a). Redetermination proceedings under *42 U.S.C. § 405(u)* are formal adjudications because they are subject to the requirements of § 405(b), which requires a "hearing" if requested by the claimant, and says that "if a hearing is held, [the agency] shall, on the basis of evidence

adduced at the hearing, affirm, modify, or reverse the [agency's findings of fact and such decision]." 42 U.S.C. § 405(b).  The Supreme Court held that the types of judgments involved in resolving "fault" in *42 U.S.C. § 404(b)* required formal adjudication. *See Califano v. Yamasaki*, 442 U.S. 682, 697 (1979) (noting that credibility determinations are involved). It reasonably follows that assessing "fault" in *§ 405(u)* would also require formal adjudication.

SSA is not complying, however, with the APA's procedural protections for formal adjudications.  The determination that there is reason to believe that fraud or similar fault was involved in prior proceedings is not a finding that has been adduced from any evidence at any hearing of which these claimants are aware. The agency is apparently relying on information it received from OIG, without submitting it into evidence in the redeterminations, in violation of the APA.  *See* 5 U.S.C. §§ 556(d), (e). Claimants are not permitted to cross-examine witnesses to challenge the fraud allegations forwarded to SSA by its OIG, even though the allegations are being used to limit the factual record.  *Id.* § 556(d); *see generally Union Elec. Co. v. FERC*, 890 F.2d 1193, 1203 (D.C. Cir. 1989). In fact, for ALJs to even consider the OIG fraud ruling without making it or any evidence in support of it part of the administrative records in these redeterminations constitutes an *ex parte* communication in violation of *§ 557(d)(1).*

### 4. SSA has devised a process for redetermining claims that unlawfully makes ALJs subject to the supervision or direction of an employee or agent engaged in the performance of investigative or prosecuting functions for an agency.

The *Administrative Procedure Act* provided that an ALJ "may not be responsible to or subject to the supervision or direction of an employee or agent engaged in the performance of investigative or prosecuting functions for an agency.  An employee or agent engaged in the performance of investigative or prosecuting functions for an agency in a case may not, in that or a factually related case, participate or advise in the decision, recommended decision, or agency

review pursuant to section 557 of this title, except as witness or counsel in public proceedings." 5 U.S.C. § 554(d).  OIG is indisputably part of the investigative or prosecuting functions of the Social Security Administration

As noted above, *HALLEX I-1-3-25* sets up a bifurcated set of procedures with distinct rights that depend on whether the redetermination originated with an OIG referral. While some procedural protections are afforded claimants whose redeterminations are based on SSA's internal reviews, claimants' rights are severely curtailed in following up OIG referrals. *HALLEX I-1-3-25(4)(a)* states that, under sections 205(u) and 1631(e)(7) of the Act, "adjudicators do not have discretion to reconsider the issue of whether the identified evidence should be disregarded when based on an OIG referral of information or a referral based on information obtained during a criminal or other law enforcement investigation."  HALLEX I-1-3-25(4)(a). The ruling also states that if SSA's action was based on OIG referrals of information pursuant to *Section 1129(l)* of the Act or referrals based on information obtained during a criminal or other law enforcement investigation, "the beneficiary or recipient may not appeal the agency's statutory mandate to conduct the redetermination or to disregard evidence". HALLEX I-1-3-25(6).  *Social Security Ruling SSR 16-1p* further provides that "[a]n individual may appeal our finding of fraud or similar fault. However, we will not administratively review information provided by SSA's Office of the Inspector General under section 1129(l) of the Act regarding its reason to believe that fraud was involved in the individual's application for benefits." *SSR 16-1p(D)(3)*, 81 Fed. Reg. at 13438.

These guidance documents make it abundantly clear that ALJs are being directed in the most fundamental aspects of adjudication, namely the ruling on admissibility of evidence. That judicial function has been defaulted to the OIG investigators, who are considered by SSA to have collected information and ruled based thereon that the claimants will not be allowed by the

investigators to present certain pre-designated evidence in SSA's due process hearings. Then SSA relinquishes the power to review OIG's investigative findings by declaring the findings of the investigators unassailable on appeal. Investigators and prosecutors do not get to decide cases and mete out punishments in our system of jurisprudence. That is the province of the adjudicatory tribunals. The APA makes it clear that this fundamental principle is true in the current context as it is in all others.

### 5.    The Social Security Administration's bifurcated process is arbitrary and capricious.

As explained in more detail *supra*, the Commissioner has adopted a bifurcated process for redeterminations based on fraud or similar fault.  If the SSA initiates a redetermination based on its internal reviews, the agency makes a record with the relevant evidence supporting the fraud finding, *see SSR 16-2p(C)(3)*, 81 Fed. Reg. at 13441, explains its finding, *see id.* at (D), and permits the recipient to appeal an adverse ruling.  *See* HALLEX 1-3-25.  But, if the OIG makes the referral, there is no such record, explanation, or appeal.  *See* HALLEX 1-3-25.

This bifurcated process has no footing in the text of *42 U.S.C § 405(u)*.  The statute identifies only a condition—"if there is reason to believe that fraud or similar fault was involved in the providing of such evidence"—and a consequence—"the Commissioner of Social Security shall disregard any evidence." 42 U.S.C. § 405(u)(1)(B).  It makes no distinction whatsoever based on the source of referral.  At the very least, this means that the SSA was not required to create a bifurcated process.  Rather, it was the agency's discretionary choice.

And that choice violates the APA's protection against "arbitrary and capricious" agency action.  5 U.S.C. § 706(2).  If the agency believes that certain procedural protections should exist (a record, an explanation, an appeal) with respect to the fraud or similar fault finding when SSA initiates the referral, then it is wholly arbitrary for the agency not to provide for similar protections

when the OIG makes the referral.  *See Kenney v. Glickman*, 96 F.3d 1118, 1124 (8th Cir. 1996) (APA requires that like cases be treated alike).  Moreover, it is capricious; Plaintiffs and the putative class are being seriously affected and harmed by their inability to learn of the record evidence being used against them and their inability to challenge the fraud or similar fault finding on appeal.  Thus, independent of the other APA claims made *supra*, the mere fact of the SSA's bifurcated process is itself violative of the APA.

6.     **The procedures for redetermination of the plaintiffs' entitlement to disability benefits violate the due process clause of Amendment V to the Constitution of the United States.**

*Amendment V* to the *Constitution of the United States* provides in pertinent part that no person shall be deprived of life, liberty, or property, without due process of law. *Goldberg v. Kelly, 397 U.S. 254 (1970)*, is the seminal case that prescribes what the fundamental elements of due process are required when the government seeks to take away benefits that have been previously awarded. The fundamentals are as follows:

• It is an immutable principle of jurisprudence that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the government's case, consisting of documentary evidence and even more important, testimony, must be disclosed to the individual so that he has an opportunity to show that it is untrue.

• With regard to the evidentiary hearing required by due process to be afforded a recipient of disability payments before the termination of such payments by the government, the recipient must be given an opportunity to confront and cross-examine the witnesses relied on by the department.

• With regard to the evidentiary hearing required by due process to be afforded a recipient of disability payments before the termination of such payments by the government, the recipient must be allowed to retain an attorney if he so desires.

• With regard to the evidentiary hearing required by due process to be afforded a recipient of disability benefits before the termination of such benefits, the decision maker's conclusion as to the recipient's eligibility must rest solely on the legal rules and evidence adduced at the hearing; to demonstrate compliance with

> such requirement, the decision maker should state the reasons for his determination
> and indicate the evidence he relied on.

*Goldberg*, 397 U.S. at 270.

It cannot be overstated how critical to these redeterminations the finding that fraud or similar fault exists in the original processing of the plaintiffs' claims for disability benefits is. Indeed, the propriety of the redetermination rests completely on this finding. The finding that critical evidence that supported the original claim is to be deleted from the record is likewise outcome-determinative in many cases. Yet these findings are ones that have been made, declared to be not subject to further consideration, and not even subject to appeal. They are findings made by an investigating agency that is not even required to disclose the evidence relied on to reach them.

Moreover, the speed with which SSA has rushed these disability benefit recipients through these redetermination proceedings has denied them effective assistance of counsel. The conventional fee arrangements in disability claims is a contingent fee of 25% of the back award of benefits accruing in the course of an appeal. Because benefits continue to be paid at the initial levels of these redeterminations, no back award accrues, making the private bar unavailable to those being subjected to these redeterminations. SSA routinely refers disability claimants to legal aid organizations, and that has been done in these cases. It has simply been impossible for legal aid agencies to meet the need for counsel. (*See Aff. of Robert Johns* (Ex. H).)  The flaws in SSA's design for due process in these redeterminations that cause it to fail to meet the requirements of the Social Security Act and the Administrative Procedure Act are the same flaws that cause the procedure to fail the constitutional test

**B.      The Plaintiffs Will Suffer Irreparable Harm Unless An Injunction Is Issued.**

The injuries suffered by those whose benefits have been or imminently are to be suspended are "irreparable," that is, that the injured could not be made whole by retroactive payments at some later time. "Back payments can have some ameliorative effect; they at least set the Secretary's ledgers straight. Yet they cannot erase either the experience or the entire effect of several months without food, shelter or other necessities. . . . [T]he [Plaintiffs'] showing [is] sufficient to meet a far higher standard than 'colorable.'" *Briggs v. Sullivan*, 886 F.2d 1132, 1140 (9th Cir. 1989). As the Supreme Court stated in *Goldberg*:

> [T]he crucial factor in this context -- a factor not present in the case of the blacklisted government contractor, the discharged government employee, the taxpayer denied a tax exemption, or virtually anyone else whose governmental entitlements are ended -- is that termination of aid pending resolution of a controversy over eligibility may deprive an eligible recipient of the very means by which to live while he waits.  Since he lacks independent resources, his situation becomes immediately desperate.  His need to concentrate upon finding the means for daily subsistence, in turn, adversely affects his ability to seek redress from the welfare bureaucracy.

*Goldberg*, 397 U.S. at 297.

Not only disability benefit money payments are being terminated. These benefit recipients also have health insurance and health care coverage through Medicare and Medicaid that is available to them only because they qualify for disability benefits. These lifelines are also being cut precipitously without recourse. Medical treatment and medications are rapidly becoming unavailable to sick people. This litigation is destined to last many months to say the least, and declining health due to lack of medicine and treatment will not take a vacation during the process. Money down the road will not repurchase what health these claimants may still have at the outset. In *M.R. v. Dreyfus*, the United States Court of Appeals for the Ninth Circuit held that a reduction of PCS constituted irreparable harm, explaining that "beneficiaries of public assistance may demonstrate a risk of irreparable injury by showing that enforcement of a proposed rule may deny

them needed medical care." 663 F.3d at 1114 (9th Cir. 2011) (quoted with approval by the Fourth Circuit in *Pashby,* 709 F.3d 307, 329); *see Hyatt v. Heckler*, 807 F. 2d 376, 379 (4th Cir. 1986) ("the unjustified denial of benefits deprived many claimants of necessities and caused them to suffer anxiety, depression, and decline in health.").

No harm is more irreparable or less fully compensable by retroactive benefit payments than death, and since the initiation of this action, at least two members of the putative class have suffered death as the result of Defendant's actions. For many, this action by the Commissioner continues to create a hopeless situation. *See Bowen*, 476 U.S. at 484 ("Many persons have been hospitalized due to the trauma of having disability benefits cut off."). For many class members, hopeless situations are dangerous. This result is entirely foreseeable, as many members of the class suffer from grave mental or emotional disabilities that include symptoms like suicidal ideations or suicidal tendencies; the very reason some of these people are unable to work is that their interaction with the normal unfairness of the public workplace is too stressful to be born. In spite of these horrifying results, Defendant clearly intends to continue to careen down this path of destruction.

**C.    The Balance of Hardships Weighs in Plaintiffs' Favor.**

The interest of the eligible recipient in uninterrupted receipt of disability benefits, coupled with the government's interest that his payments not be erroneously terminated, clearly outweighs the government's competing concern to prevent any increase in its fiscal and administrative burdens. As the Supreme Court stated in *Goldberg,* "the stakes are simply too high for the benefit recipient, and the possibility for honest error or irritable misjudgment too great, to allow termination of benefits without giving the recipient a chance, if he so desires, to be fully informed of the case against him so that he may contest its basis and produce evidence in rebuttal." *Goldberg*, 397 U.S. at 266. In *Pashby,* the Fourth Circuit affirmed that a government's financial

28

considerations cannot outweigh the plaintiffs' health concerns. 709 F.3d 307, 329. Moreover, the government "is in no way harmed by issuance of a preliminary injunction which prevents the state from enforcing restrictions likely to be found unconstitutional. If anything, the system is improved by such an injunction." *Centro Tepeyac*, 722 F.3d at 191.

**D.     The Public Interest Favors Issuance of the Preliminary Injunction.**

Finally, the Court should have little difficulty concluding that the public interest is best served by enjoining the Defendant from proceeding in what appears to be an unlawful and unconstitutional manner, and requiring it to provide proof either of the propriety of its procedures, or of its plans to revise its procedures in order to allow this Court to make the determination that proceedings may continue. *See Centro Tepeyac*, 722 F.3d at 191 ("upholding constitutional rights surely serves the public interest"). In *Pashby*, the Fourth Circuit quoted other circuits with approval in stating that there is a robust public interest in safeguarding access to health care for those eligible for Medicaid. The same would hold true for those disability benefit recipient who have Medicare insurance coverage based on the prior ALJ determinations that they are disabled. Preserving the status quo preserves the availability of health care to the plaintiffs and the other members of the proposed class.  The public interest in this case lies, as it did in *Pashby*, with safeguarding public health rather than with assuaging SSA's budget concerns. In light of the harm already caused to members of the Plaintiff class and the threat of additional, irreversible harm, it is obvious why preservation of the status quo and preventing recurring violations are important public policy considerations, and are likewise important factors in considering whether to grant a preliminary injunction; here, they weigh heavily in favor of the injunction requested by this disadvantaged class of Plaintiffs. *See W. T. Grant Co.,* 345 U.S. at 632.

## IV. CONCLUSION

The facts in this case are extraordinary to the point of being astonishing. To be sure, preliminary injunctive relief is an "extraordinary remedy." *Winter*, 555 U.S. at 24. Clearly, this is one of those "extraordinary causes" for which the remedy is fairly available. *Ex parte Fahey*, 332 U.S. 258, 260 (1947). The Plaintiffs have demonstrated that the requested preliminary injunction is warranted under each of the four factors utilized in determining if a preliminary injunction is appropriate. Given the nature of the dire situation presented, and the unusually harsh treatment of these innocent persons by the government under highly questionable circumstances, this case cries out for extraordinary action by the Court to preserve a reasonable status quo until the rights of the parties can be reasonably determined. For the reasons set forth in this Memorandum, the Plaintiffs pray that their Motion for Preliminary Injunction be granted.

*Respectfully Submitted,*
**KEVIN ROBERTSON and**
**JENNY ROSE**, **KATHY**
**COLLINS** *individually*
*and on behalf of a class of*
*individuals similarly situated,*
*By counsel.*

*/s/ Bren J. Pomponio*
Bren J. Pomponio (WV Bar ID # 7774)
Mountain State Justice, Inc.
1031 Quarrier Street, Suite 200
Charleston, West Virginia 25301
Telephone: (304) 344-3144
Facsimile: (304) 344-3145
bren@msjlaw.org

*/s/ Ned Pillersdorf*
Ned Barry Pillerdorf (KY Bar ID # 54930)
Pillersdorf, DeRossett & Lane
124 West Court St.
Prestonsburg, KY 41653
Office: 606.886.6090
pillersn@bellsouth.net

*/s/ John O. Goss*
John O. Goss (VA Bar ID # 17333)
Goss & Fentress PLC
735 Newtown Road, Suite 100
Norfolk, VA 23502
Office: 757.466.1095
johngoss@gossandfentress.com

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION**

**KEVIN ROBERTSON
JENNY ROSE,** and **KATHY
COLLINS,** individually and
on behalf of all others similarly
situated,

        Plaintiffs.

v.                                                                                **Civil Action No. 3:16-cv-2113**

**CAROLYN W. COLVIN,** in her
official capacity as Acting Commissioner
of the Social Security Administration,

        Defendant.

<u>**CERTIFICATE OF SERVICE**</u>

    I, Bren J. Pomponio, counsel for the Plaintiffs, do hereby certify that on this 8th day of

April, 2016, I electronically filed the foregoing ***"Memorandum of Law in Support of Motion for***

***Preliminary Injunction"*** via the Court's CM/ECF system which will serve a complete copy of the

same upon the following counsel:

MATTHEW C. LINSDAY
Assistant United States Attorney
U.S. Attorney's Office
300 Virginia Street, East, Room 4000
Charleston, WV  25301
*Counsel for Defendant*

                                           /s/ Bren J. Pomponio
                                           Bren J. Pomponio (State Bar ID No. 7774)