IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

KEVIN ROBERTSON, JENNY ROSE,
and KATHY COLLINS, individually and
on behalf of all others similarly situated,

                Plaintiffs,

v.                                          CIVIL ACTION NO. 3:16-2113

CAROLYN W. COLVIN, in her official
Capacity as Acting Commissioner of the
Social Security Administration,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant's Motion to Dismiss the Class Action Complaint (ECF No. 29) pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, the Court **GRANTS** Defendant's Motion.

**BACKGROUND**

Named Plaintiffs have all received Social Security Disability benefits from the Social Security Administration (SSA) under Title II.[1] *Pls.' Compl.*, ECF No. 1, at ¶¶ 41, 51, 58. Plaintiffs Kevin Robertson and Jenny Rose first received benefits after an appeal of their respective denied applications. *Id.* at ¶¶ 40, 50. Both Plaintiffs sought assistance from Attorney Eric Conn

---

[1] Title II serves as a disability insurance program that awards benefits without referring to financial need, whereas Title XVI serves as a welfare program to provide benefits to "financially needy individuals." *Bowen v. Galbreath*, 485 U.S. 74, 75 (1988).

for the appeals. *Id.* at ¶¶ 41, 51. Robertson introduced the expert opinion evidence of Dr. Bradley Adkins to bolster his appeal, and Rose introduced evidence from Srinivas Ammisetty, M.D. for hers. *Id.* at ¶¶ 40, 50. Administrative Law Judge (ALJ) David Daugherty subsequently awarded Robertson and Rose their respective disability benefits. *Id.* at ¶¶ 41, 51. ALJ Daugherty also awarded Plaintiff Kathy Collins her disability benefits after reviewing the evidence, which included records from Frederic Huffnagle, M.D. *Id.* at ¶ 58.

The Office of the Inspector General (OIG) began investigations on cases brought to the SSA by Conn, or Conn's law firm, and those decided by ALJ Daugherty. *Id.* at ¶ 12-13. The OIG notified the SSA that there was reason to believe that fraud or similar fault was involved in disability benefits applications submitted by Conn that contained evidence from Bradley Adkins, Ph.D., Srinivas Ammisetty, M.D., Frederic Huffnagle, M.D., and David P. Herr, D.O. *Id.* at ¶ 16. This referral was dated May 12, 2015 and referenced 1,787 cases suspected of containing evidence obtained by fraud or similar fault. *Id.* at ¶ 20.

By statutory mandate, as soon as the OIG "has reason to believe that fraud was involved in the application of an individual for monthly insurance benefits", the OIG must refer the information to the SSA. *See* 42 U.S.C. § 1320a-8(l). Once such a referral is made, or the SSA through its own investigations has reason to believe fraud or similar fault is involved, the SSA "shall immediately redetermine" those cases involving fraud or fault. 42 U.S.C. § 405(u)(1)(A). During redetermination, the SSA "shall disregard any evidence if there is reason to believe that fraud or similar fault was involved in the providing of such evidence." *Id.* at § 405(u)(1)(B).

Pursuant to this statutory scheme, the SSA sent letters on or around May 18, 2015 to most of the individuals from these affected cases, including Named Plaintiffs, because they had received Conn's, or Conn's law firm's, representation. *Pls.' Compl.*, ECF No. 1, at ¶ 19. The notices

specified that the claimant's benefits would be redetermined without the use of medical evidence submitted by Adkins, Ammisetty, Huffnagle, or Herr. *Id.* at ¶ 21. The claimants had ten days to submit new evidence of their disability from the time of the original award for an ALJ to consider in redetermination. *Id.* at ¶ 22.

A redetermination hearing decides whether the disability claimant qualified for benefits at the time of the original application. HALLEX I-1-3-25(C)(3) ("[A]n adjudicator will be directed to consider the claim(s) only through the date of the final and binding determination or decision on the beneficiary's or recipient's application for benefits."). The adjudicator's decision must rely only on new evidence and evidence left in the file after removing disregarded evidence pursuant to § 405(u). HALLEX I-1-3-25(C)(4)(c). Interpreting the language in § 405(u), HALLEX provides that "adjudicators do not have discretion to reconsider the issue of whether the identified evidence should be disregarded when based on an OIG referral …." HALLEX I-1-3-25(C)(4)(a). A claimant can appeal the adjudicator's decision to discontinue disability benefits, but when based on an OIG referral, "the beneficiary or recipient may not appeal the agency's statutory mandate to conduct the redetermination or to disregard evidence …." HALLEX I-1-3-25(C)(6).

Robertson appeared before an ALJ for a redetermination hearing on October 18, 2015, and the ALJ issued a decision that the remaining evidence in Robertson's file was insufficient to establish disability from 2009. *Pls.' Compl.*, ECF No. 1, at ¶ 44. Since the Complaint, the Appeals Council denied to review this ALJ decision, and thus, Robertson's administrative remedies have been properly exhausted. *Decl. of Kelly Salzmann*, ECF No. 24-1. At this time, Rose and Collins are awaiting a final determination by the SSA regarding their disability benefits. *Pls.' Compl.*, ECF No. 1, at ¶¶ 55, 63.

**DISCUSSION**

Named Plaintiffs brought suit against the Acting Commissioner of the SSA through a Class Action Complaint filed on March 4, 2016. *Pls.' Compl.*, ECF No. 1. The focus of the lawsuit is not on the denial of disability benefits from the redetermination hearings, but instead on the process of redetermination. *Id.* at ¶ 1. Named Plaintiffs seek relief through a declaratory judgment stating that Defendant's redetermination process violated: (1) the regulations under the Social Security Act (the Act); (2) the Due Process Clause of the Fifth Amendment to the United States Constitution; and (3) the Administrative Procedures Act (APA). *Id.* at ¶ 23.

Defendant's Motion to Dismiss attacks the Complaint on two fronts: first, challenging the subject matter jurisdiction of this Court under Federal Rule 12(b)(1) due to the failure to completely exhaust administrative remedies and claim splitting; and second, asserting that the Complaint fails to state a claim for any of the three Counts under Federal Rule 12(b)(6). *Def.'s Mot. to Dismiss*, ECF No. 29.

**I.    Lack of Subject Matter Jurisdiction**

It is axiomatic that a court must have subject matter jurisdiction over a controversy before it can render any decision on the merits. A motion to dismiss pursuant to Rule 12(b)(1) raises the fundamental question of whether a court is competent to hear and adjudicate the claims brought before it and requires dismissal if the court lacks such jurisdiction. Federal courts possess "only the jurisdiction authorized them by the United States Constitution and by federal statute." *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009). Rule 12(b)(1) permits a party to move for dismissal for lack of subject matter jurisdiction. In such cases, the plaintiff has the burden of establishing a factual basis for jurisdiction. *See Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 561 (1992); *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765,

768 (4th Cir. 1991). In ruling on a 12(b)(1) motion, the court may consider the pleadings' allegations as jurisdictional evidence. *Id*.

Challenges to jurisdiction under Rule 12(b)(1) may be raised in two distinct ways: "facial attacks" and "factual attacks." *Thigpen v. United States*, 800 F.2d 393, 401 n.15 (4th Cir. 1986), *rejected on other grounds by Sheridan v. United States*, 487 U.S. 392 (1988). A "facial attack" questions whether the complaint's allegations are sufficient "to sustain the court's jurisdiction." *Id*. If a "facial attack" is made, the court must accept the complaint's allegations as true and decide if the complaint is sufficient to confer subject matter jurisdiction. *Id*.

On the other hand, a "factual attack" challenges the truthfulness of the factual allegations in the complaint upon which subject matter jurisdiction is based. *Id*. In this situation, a "district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768 (citations omitted). To prevent dismissal, "the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Id*. (citation omitted). A dismissal should only be granted in those instances in which "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id*. (citation omitted).

    a. **Plaintiffs Rose and Collins**

Plaintiffs Rose and Collins admittedly have not exhausted the administrative remedies provided under the Act before pursuing the instant action. *Pls.' Resp. to Def.'s Mot. to Dismiss*, ECF No. 39, at 4. Robertson, on the other hand, has exhausted his administrative remedies and the SSA reached a final decision for his claim. Thus, the Court discusses Plaintiffs Rose and Collins separately from Robertson.

### i. Jurisdiction under § 405(g)

The Act's section on judicial review allows "[a]ny individual, *after any final decision of the Commissioner of Social Security* made after a hearing to which he was a party … [to] obtain a review of such decision by a civil action[.]" 42 U.S.C. § 405(g) (emphasis added). A final decision is one that determines a claimant's entitlement to benefits. *See Mathews v. Eldridge*, 424 U.S. 319, 329 (1976). "No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any … tribunal … except as herein provided." 42 U.S.C. § 405(h).

The Supreme Court emphasizes the importance and necessity of full exhaustion of administrative remedies under the Medicare Act, which ties back to the Social Security Act, in *Shalala v. Illinois Council on Long Term Care, Inc.* 529 U.S. 1, 12-13 (2000). In that case, the Court explains that § 405(h) "demands the channeling of virtually all legal attacks through the agency" to "assure[] the agency greater opportunity to apply, interpret, or revise policies." *Id.* Congress designed this requirement to prevent individual courts from reaching different conclusions regarding whether an exception or waiver would allow a premature claimant into federal court. *Id.* The Court recognizes a limited exception to the full exhaustion requirement when the adherence to § 405(h) would completely bar judicial review. *Id.* at 19.

However, the limited exception would not apply in this case because Plaintiffs have an opportunity for judicial review after the SSA's final decision. The Commissioner's final decision is not the same as a decision to undertake a redetermination of disability benefits. A final decision is reached after the process of redetermination has been completed and a decision on the entitlement of benefits been made. Full exhaustion "comes at a price, namely occasional individual, delay-related hardship", but Congress found this price justified due to the complex social security system. *Id.* at 13 (describing Medicare as a "massive, complex health and safety

program" that justifies the individual cost borne by claimants in requiring complete exhaustion). Here, Rose and Collins have not received the Commissioner's final decision. Thus, Rose and Collins have not fully exhausted the remedies required by § 405(g).

Plaintiffs therefore argue that this Court should excuse or waive the exhaustion requirements under the framework set in *Mathews v. Eldridge*. 424 U.S. 319 (1976). The final decision requirement consists of two separate elements: "[t]he nonwaivable element … that a claim for benefits shall have been presented to the Secretary"; and "[t]he waivable element … that the administrative remedies prescribed by the Secretary be exhausted." *Id.* at 328. There are some situations in which it would be "inappropriate" to give the agency's final judgment determination deference because "a claimant's interest in having a particular issue resolved promptly is so great." *Id.* In *Bowen v. City of New York*, the Supreme Court explains that full exhaustion is not necessary when: (1) "the constitutional challenge brought … [is] entirely collateral to [a] substantive claim of entitlement", and (2) the claimant would be "irreparably injured were the exhaustion requirement now enforced against them." 476 U.S. 467, at 483 (1986); *see also Cleaton v. Sec'y, Dep't of Health & Human Servs.*, 815 F.3d 295, 300 n.8 (4th Cir. 1987). Due to the "intense[] practical[ity]" of the exhaustion requirement, courts should not limit analysis to a "mechanical application of the … factors." *Bowen*, 476 U.S. at 484. Policy reasons underlying the exhaustion requirement should also factor into determining whether waiver is justified. *Id.* at 484-85 (explaining how the compilation of an administrative record and deference to agency expertise fulfill the policy goals of exhaustion).

Plaintiffs argue that their challenge to the process of SSA redeterminations is "purely collateral" from the decision as to whether Plaintiffs are entitled to disability benefits. *Pls.' Resp. to Def.'s Mot. to Dismiss*, ECF No. 39, at 4. Claims have been considered collateral when "the

[plaintiffs] neither sought nor obtained benefits in the district court." *Hyatt v. Heckler*, 807 F.2d 376, 389 (4th Cir. 1986); *see also Bowen*, 476 U.S. at 483.  In *Hyatt*, the Fourth Circuit remanded the plaintiffs' claims to the SSA for reconsideration because the SSA refused to follow the law of the circuit regarding the analysis of a claimant's capacity to work.  *Hyatt*, 807 F.2d at 379.  The circuit's decision did not provide the plaintiffs with entitlement to potential benefits, but only guaranteed that the SSA would follow the regulated procedures on remand.  *Id.*

Here, a decision by this Court discrediting the SSA's statutory mandate would award Plaintiffs Rose and Collins with continued access to disability benefits.  Instead of merely requesting that the SSA follow its regulations on remand, Plaintiffs ask the Court to enjoin Defendant from following the statutory mandate set out in § 405(u).  Finding the redetermination process to be a violation of the Act, the APA, or the Due Process Clause of the Fifth Amendment would prevent the SSA from potentially terminating Plaintiffs' benefits, allowing the benefits to continue.  Although Plaintiffs challenge the redetermination process, their constitutional claim is inextricably tied with their entitlement to benefits.[2]  Even if Plaintiffs are not asking this Court to substantively grant their benefits through this action, Plaintiffs would continue to obtain benefits

---

[2] This case is similar to one brought before the Eastern District of Kentucky, which dismissed the plaintiffs' claims for not exhausting administrative remedies.  *Martin v. Colvin*, No. 15-46-ART, 2015 WL 7202484 (E.D. Ky. Nov. 16, 2015).  Both Plaintiffs and Defendant point to this case as a recent embodiment of similar claims, albeit some differences.  During that court's discussion on whether the constitutional claim was collateral to the entitlement of benefits, the court referenced the possibility of needing to examine the SSA's determination of fraud, which would result in a determination of whether the plaintiffs were actually disabled during the initial award for benefits.  *Id.* at *2.  This examination of the factual record would substantially involve the same evidence provided to the SSA during the administrative process.  *Id.*  Thus, the court held that "the issues in both claims are not completely separate."  *Id.*  This Court is not bound by any analysis of another district court, particularly one in another district.  Moreover, this Court finds that the argument explained above, namely that obtaining benefits by discrediting the redetermination process is not collateral to the general entitlement of benefits, is a stronger reasoning for denying waiver in this case.

if the Court held that the redetermination process violated a statute or the Constitution. Thus, the Court finds that Plaintiffs' challenge to the redetermination process is not a collateral issue to the substantive grant or maintenance of disability benefits.

Even if considered a collateral issue, however, the second waiver element is not met because exhausting the administrative process before seeking judicial review would not cause Plaintiffs irreparable harm. Plaintiffs argue that Rose and Collins "depend on their disability benefits for medical coverage and costs" and that even a brief termination could cause them medical setbacks. *Pls.' Resp. to Def.'s Mot. to Dismiss*, ECF No. 39, at 4 (citing *Hyatt* and *Bowen* for potential setbacks of anxiety, depression, and general decline in health); *Pls.' Compl.*, ECF No. 1, at ¶¶ 56, 64. The Supreme Court found in *Eldridge*, that "an erroneous termination would damage [the plaintiff] in a way not recompensable through retroactive payments" because of the plaintiff's physical health and dependency on the benefits. 424 U.S. at 331. However, the Court also recognized that although "the hardship imposed upon the erroneously terminated disability recipient may be significant[,] … the disabled worker's need is likely to be less than that of a welfare recipient." *Id.* at 342 (discussing *Goldberg v. Kelly*, 397 U.S. 25, 266 (1970)). This notable difference between disability benefits and the welfare benefits discussed in *Kelly* justified the different due process requirements for termination hearings, requiring pretermination hearings only for the latter. *Id.* at 349; *see also Kelly*, 397 U.S. at 266. The Fourth Circuit in *Hyatt*, moreover, found irreparable harm when there was specific evidence to support the plaintiff's anxiety and distress caused by the termination and denial of benefits. *Hyatt*, 807 F.2d at 380.

These examples of irreparable harm found in other cases do not support Plaintiffs' claim of irreparable harm in the instant case. In *Hyatt* and *Eldridge*, the plaintiffs were suffering from the denial or imminent termination of benefits. Here, Plaintiffs Rose and Collins have not had

their benefits terminated, nor have they received a notice of imminent termination. Rather, they have been given notice of a redetermination hearing that will examine new evidence, if provided, of their disabilities. The SSA has continued payments during this redetermination period. *Pls.' Compl.*, ECF No. 1, at ¶ 16. Any irreparable harm is thus purely speculative. Furthermore, Plaintiffs will receive retroactive relief if a court determines that their benefits were wrongfully terminated. However, it is too early in the process to permit an exhaustion waiver when Plaintiffs Rose and Collins have so far not been denied their disability benefits.

Moreover, courts providing waivers to exhaustion continue to highlight the limited scope of its use. In *Bowen*, the district court recognized that the plaintiffs could not challenge the agency proceeding through the administrative process because there was "a systematic, unrevealed policy" that ran counter to the agency regulations. *Bowen*, 476 U.S. at 485. If the plaintiffs were forced to exhaust their administrative remedies in that case, the process would have been futile because the factual record developed during the administrative appeals would not affect the illegality of the process. *Id.* The constitutional challenge was completely collateral to the entitlement of benefits since the court's declaration of the process's illegality did not provide the plaintiffs with disability benefits, but rather enforced the regulated steps provided for in the Social Security Act. "Under these unique circumstances, there was nothing to be gained from permitting the compilation of a detailed factual record, or from agency expertise." *Id.* In *Hyatt*, the district court discovered that the Secretary instructed the SSA to actively ignore circuit court decisions and instead follow the Secretary's regulations. *Hyatt*, 807 F.2d at 379. The court, however, maintained that waiver in other circumstances would "rarely be appropriate." *Id.* at 378. In both of these cases, the claimants were up against actions by the SSA that were secretive or against

statutory mandates. Administrative review could not solve these clandestine operations or provide relief.

The unique set of circumstances found in *Bowen* and *Hyatt* is not applicable to the case here. Plaintiffs challenge the redetermination process, alleging that it violates the Social Security Act, the APA, and the Constitution. The challenged section, § 405(u), is not "a systematic, unrevealed policy" of the SSA. *Bowen*, 476 U.S. at 485. Rather, the section at issue is a statutory mandate that requires the SSA to redetermine any case in which there is reason to believe fraud or similar fault has led to the approval of benefits. It further forces the ALJ to disregard any evidence stemming from that fraud or fault. Plaintiffs here have the opportunity, unlike the plaintiffs in *Bowen*, to challenge the termination of benefits by submitting new evidence to prove their disability at the time benefits were awarded. By still having an opportunity to prove disability with new evidence, there is no indication that Plaintiffs will be irreparably harmed by completing the redetermination process. At this time, Plaintiffs' benefits could be terminated or allowed to continue. This is why the Act requires full exhaustion of the administrative process – allowing judicial review only after a final decision to avoid interference with the agency's procedure. By going through the administrative remedies, a full administrative record can be developed, and the agency is afforded an opportunity to proceed with the redetermination process with its expertise and experience. These underlying policy reasons for requiring strict adherence to full exhaustion are supported in the instant case.

The Supreme Court in *Bowen* limits its holding, explaining that a waiver in that case "does not suggest that exhaustion is to be excused whenever a claimant alleges an irregularity in the agency proceedings." *Bowen*, 476 U.S. at 485. Rather, the Supreme Court specified the unique circumstances of that case, finding that a court "should be especially sensitive to this kind of harm

-11-

where the government seeks to require claimants to exhaust administrative remedies merely to enable them to receive the *procedure they should have been afforded in the first place.*" *Id.* at 484 (emphasis added). Here, Plaintiffs are receiving the procedure that is statutorily provided for. The Court is not convinced by Plaintiffs argument that Plaintiffs Rose and Collins satisfy the unique circumstances justifying waiver or excusal from the exhaustion requirements set out in § 405(g). Accordingly, the Court finds that Plaintiffs Rose and Collins have not complied with the judicial review constructions in the Act.

### ii. Jurisdiction under 28 U.S.C. § 1331

In the Complaint, Plaintiffs further allege that federal jurisdiction is warranted through federal question jurisdiction pursuant to 28 U.S.C. § 1331. *Pls.' Compl.*, ECF No. 1, at ¶ 32. However, the Act specifically limits judicial review of SSA decisions until after a final decision has been rendered, prohibiting jurisdiction under § 1331. 42 U.S.C. § 405(h) ("No action against … the Commissioner of Social Security … shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter."). The Supreme Court recognizes that this restriction applies to all cases brought under the Act, whether involving "evidentiary, rule-related, statutory, constitutional, or other legal" issues. *Ill. Council*, 529 U.S. at 10; *see also Weinberger v. Salfi*, 422 U.S. 749, 758 (1975). As a challenge to the redetermination process mandated in § 405(u) is a dispute under the subchapter and raises statutory and constitutional questions, Plaintiffs' case falls into the prohibition of § 405(h), and Plaintiffs cannot seek federal question jurisdiction through § 1331. Plaintiffs did not raise any counterarguments to Defendant's challenge of this attempted exercise of federal question jurisdiction. Because the Act limits the method in which claims under it can appear in federal court, the Court finds that federal question jurisdiction is unavailable.

### iii. Jurisdiction under 28 U.S.C. § 1361

Plaintiffs also claim subject matter jurisdiction through mandamus jurisdiction pursuant to 28 U.S.C. § 1361. *Pls.' Compl.*, ECF No. 1, at ¶ 33. Mandamus jurisdiction allows the Court "to compel an officer or employee … to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. However, that avenue to federal court "is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief[.]" *Heckler v. Ringer*, 466 U.S. 602, 616 (1984). As explained above, Plaintiffs Rose and Collins have not yet exhausted all of the administrative remedies available. Thus, mandamus jurisdiction is not warranted, and Plaintiffs did not object to Defendant's argument that jurisdiction under such theory is unavailable.

Plaintiffs Rose and Collins, and any other claimants potentially brought in under the pending Motion for Class Certification (ECF No. 15), cannot prematurely seek judicial review without having exhausted the administrative remedies pursuant to 42 U.S.C. § 405(g). The recognized waivers and exceptions to complete exhaustion do not apply in this case. Federal question jurisdiction under 28 U.S.C. § 1331 and mandamus jurisdiction under 28 U.S.C. § 1361 likewise do not apply. Accordingly, it is hereby **ORDERED** that Defendant's Motion to Dismiss regarding Plaintiffs Rose and Collins under Federal Rule 12(b)(1) is **GRANTED**.

### b. Plaintiff Robertson

Defendant's Motion to Dismiss also challenges the Court's subject matter jurisdiction over Plaintiff Robertson. *Def.'s Mot. to Dismiss*, ECF No. 29, at 9. Although Defendant concedes that Robertson has exhausted his administrative remedies, Defendant argues that this instant action does not appropriately challenge the "final decision of the Commissioner" as is required under 42 U.S.C. § 405(g) because the claim is based on process and not on Robertson's entitlement to benefits. Robertson has since filed another lawsuit challenging the denial of his disability benefits

in this Court. *See Robertson v. Colvin*, No. 3:16-cv-03846 (S.D.W. Va.).[3] That lawsuit also contains counts alleging that the redetermination process violates the Act, the APA, and the Constitution. *See Robertson v. Colvin*, No. 3:16-cv-03846 (S.D.W. Va.), *Pl.'s Compl.*, ECF No. 2, at ¶¶ 10, 12.

Defendant argues that Robertson has violated the rule against claim splitting, which "prohibits a plaintiff from prosecuting its case piecemeal and requires that all claims arising out of a single wrong be presented in one action." *Lee v. Norfolk S. Ry. Co.*, 802 F.3d 626, 635 (4th Cir. 2015); *see also Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 273 F. App'x 256, 265 (4th Cir. 2008) ("When one suit is pending in federal court, a plaintiff has no right to assert another action on the same subject in the same court, against the same defendant at the same time." (internal quotations omitted)). "The rule against claim splitting is one of the principles of res judicata." *Sensormatic Sec. Corp.*, 273 F. App'x at 264 (citing *Nash Cty. Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484, 490 (4th Cir. 1981)). One of the "principal purpose[s]" of res judicata, and claim splitting, "is to protect the defendant from the burden of relitigating the same claim in different suits." *Keith v. Aldridge*, 900 F.2d 736, 740 (4th Cir. 1990). Preventing claim splitting, moreover, serves to protect judicial resources and promote judicial economy. *See Katz v. Gerardi*, 655 F.3d 1212, 1218 (10th Cir. 2011) (explaining judicial interests in prohibiting claim splitting in federal courts). A district court has discretion to control its docket and prevent duplicate litigation in its courts. *See Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp.*, 296 F.3d 982, 985 (10th Cir. 2002) (explaining district court's ability to manage its docket); *Curtis v.*

---

[3] Magistrate Judge Omar J. Aboulhosn granted a stay in this case until this Motion to Dismiss was ruled upon due to the potential affect this ruling could have on that case. *See Robertson v. Colvin*, No. 3:16-cv-03846, ECF No. 12.

*Citibank*, 226 F.3d 133, 138 (2d Cir. 2000) (finding that dismissal for claim splitting is part of a district court's "general power to administer its docket").

Here, Robertson is trying to challenge the redetermination process in two different lawsuits, albeit in the same court. The instant action does not contain an appeal to Robertson's denial of benefits, which better challenges the Commissioner's final decision, because Robertson had not exhausted his administrative remedies at the time the Complaint was filed. However, the action brought by Robertson on April 22, 2016 contains both the direct appeal of his denial of disability benefits and the allegations of the redetermination process violating the Act, the APA, and the Constitution.[4] Allowing Robertson to pursue both claims simultaneously will drain judicial resources and cause unnecessary duplication, not to mention the burden put on Defendant to defend against the same allegations in both cases. For the purposes of judicial economy, it makes sense to adjudicate the denial of claims with the challenge to the redetermination process because the claims involve the same parties and the same set of circumstances.

Plaintiffs advocate for a dismissal of the second action rather than the instant case, arguing that the substantive claim for denial of benefits could be added to this case. *Pls.' Resp. to Def.'s Mot. to Dismiss*, ECF No. 39, at 7. Although the second suit is usually considered barred after the first one moves forward, the Court finds that the decision on which case to dismiss from the docket is largely irrelevant. *See Sensormatic*, 273 F. App'x at 265 ("the second suit will be barred

---

[4] In Plaintiffs' Response to Defendant's Motion to Dismiss, Plaintiffs states that the second action "concerns Mr. Robertson's substantive claim of disability, and not the collateral attacks on the process of redetermination." *Pls.' Resp. to Def.'s Mot. to Dismiss*, ECF No. 39, at 7. However, looking at Robertson's second complaint shows similar counts as alleged in the instant action: (1) Count II concerns violations of due process under the Act and the Fifth Amendment; and (2) Count III asserts a violation of the APA. *Pl.'s Compl.*, ECF No. 2, at ¶¶ 10, 12. Although the allegations are not as specific as those stated in the instant action, the complaint covers all of the alleged violations in the instant case.

if the claim involves the same parties and arises out of the same transaction" (internal quotations and citation omitted)). The Court has already dismissed the other Named Plaintiffs, leaving only Robertson left in the instant action. Moreover, dismissing the instant case does not prejudice Robertson because he is able to challenge the redetermination process within his other action pending before the Court. The two actions allege the same set of common facts, and there is no reason appearing to this Court that the instant case is any better suited to adjudicating Robertson's claims than the subsequently filed action. As the latter action also already challenges the denial of Robertson's disability benefits, the Court finds that the second suit better reflects the final decision of the SSA as required by 42 U.S.C. § 405(g) and incorporates all of Robertson's alleged causes of action in one lawsuit.

Therefore, the Court agrees with Defendant that Plaintiff Robertson has impermissibly split his claim into two different lawsuits within the Court and that the most efficient procedure would be to dismiss the instant case, allowing Robertson to pursue his legal challenges in the subsequently filed action. Accordingly, Defendant's Motion to Dismiss against Plaintiff Robertson is **GRANTED**.

## II.     Failure to State a Claim

As all of the Named Plaintiffs have been dismissed for the lack of subject matter jurisdiction, the Court finds it unnecessary to discuss Defendant's arguments for a dismissal pursuant to Federal Rule 12(b)(6). Such issues can be determined in Plaintiff Robertson's remaining case, No. 3:16-cv-03846.

## CONCLUSION

In sum, the Court finds that it lacks subject matter jurisdiction over Named Plaintiffs because Plaintiffs Rose and Collins have not fully exhausted administrative remedies and Plaintiff

Robertson has impermissibly split his claims in this Court. As all plaintiffs are dismissed, the Court finds it unnecessary to discuss Defendant's arguments regarding the failure to state a claim pursuant to Federal Rule 12(b)(6). Accordingly, the Court **GRANTS** Defendant's Motion to Dismiss the Class Action Complaint (ECF No. 29).

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: October 5, 2016

_____
ROBERT C. CHAMBERS, CHIEF JUDGE